[No. S061929. July 9, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID DELOZA, Defendant and Appellant.

## COUNSEL

Richard L. Fitzer and Gary M. Mandinach, under appointments by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Pamela C. Hamanaka, Sanjay T. Kumar, Jaime L. Fuster and Alan D. Tate, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN, J.**—In this case we consider whether the same analysis used to determine if multiple punishment is permitted under Penal Code[1] section 654[2] should be used to determine if consecutive sentencing is required by section 1170.12, subdivision (a)(6) and (7) (subdivision (a)(6) and (7)).[3] We conclude these analyses are not coextensive, and therefore reverse the judgment of the Court of Appeal.

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

[2]At the time section 1170.12 was enacted in 1994, section 654 provided in relevant part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ." (As amended by Stats. 1977, ch. 165, § 11, p. 644.)

[3]Section 1170.12, subdivision (a)(6) and (7) provides:

"(a) Notwithstanding any other provision of law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior felony convictions, as defined in subdivision (b), the court shall adhere to each of the following:

" . . . . . . . . . . . . . . . . . . . . . . . .

"(6) If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to this section.

"(7) If there is a current conviction for more than one serious or violent felony as described in paragraph (6) of this subdivision, the court shall impose the sentence for each conviction

## I. FACTS AND PROCEDURAL BACKGROUND

On November 26, 1995, at approximately 4 p.m., defendant David Deloza and an unidentified armed companion entered the Arroyo Furniture store in Highland Park. The gunman pointed the weapon at one of the salespersons, Rafael Gil, and defendant asked him where the money was. Gil pointed toward the assistant manager, Linda Gutierrez. Gutierrez stood up, opened the cash register, and stepped back. Defendant removed approximately $1,200 in cash. Defendant then unsuccessfully searched for additional money in several drawers. He approached another salesperson, Juan Lucataro, and demanded his wallet; defendant removed $200, and tossed the wallet to the ground. During all of this time, the gunman was pointing his weapon at Gil. Gil was then asked for and gave the gunman $10 from his wallet. A customer, Joyce Stinson, approached defendant, who she thought was a salesperson. Defendant demanded her purse. When she failed to immediately comply, he yanked the purse from her shoulder, and he and the gunman fled. The crime was captured on videotape, and defendant was positively identified by the four victims.

Defendant was convicted of four counts of second degree robbery (§ 211), and the allegation that he was armed with a firearm was found true on each count (§ 12022, subd. (a)(1)). In a bifurcated proceeding, the jury also found true the allegations that defendant had suffered two prior serious felony convictions. The trial court sentenced him to state prison for four consecutive terms of twenty-five years to life (§ 1170.12, subd. (c)(2)(A)), consecutive to a determinate term of one year for the arming enhancement (§ 12022, subd. (a)(1)), and a determinate term of ten years for the prior serious felony conviction enhancements (§ 667, subd. (a)).

The Court of Appeal affirmed, rejecting defendant's argument that the trial court did not understand the scope of its discretion to impose concurrent sentences. The court stated, "A defendant who is punished under the three strikes law must generally be given consecutive sentences for each current serious felony conviction. [Citations.] The exceptions to the rule of mandatory consecutive sentences are when the current felonies were 'committed on the same occasion' or if they arose 'from the same set of operative facts[.]' " The court concluded that because section 654's proscription against multiple punishment is not applicable to crimes of violence (such as robbery) against

---

consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law."

The relevant portions of the initiative version of the three strikes law adopted by the voters in November 1994 (§ 1170.12), and the March 1994 legislative version (§ 667, subds. (b)-(i)), are virtually identical.

multiple victims, these exceptions to mandatory consecutive sentencing were inapplicable.

We granted defendant's petition for review, and deferred further action pending consideration and disposition of related issues in *People* v. *Hendrix,* review granted September 25, 1996 (S055275), and *People* v. *Nelson* (Cal.App.). *People* v. *Hendrix* (1997) 16 Cal.4th 508 [66 Cal.Rptr.2d 431, 941 P.2d 64] (*Hendrix*) was filed on August 18, 1997. We subsequently designated this case as the lead case in which to determine whether the same analysis used to determine if multiple punishment is permissible under section 654 should be used to determine if subdivision (a)(6) and (7) requires consecutive sentencing.

## II.  DISCUSSION

### A.  *Background*

#### 1.  *People v. Hendrix*

In *Hendrix, supra,* 16 Cal.4th 508, the defendant pointed a gun at four people seated at a shopping mall table and demanded their money. Two complied. The defendant was subsequently convicted of two counts of robbery, and two counts of attempted robbery, and the allegations that the defendant personally used a firearm in committing each of these crimes were found true. (*Id.* at pp. 510-511.) "Defendant subsequently admitted three prior serious felony convictions." (*Id.* at p. 511.) We held that consecutive sentences were not mandatory under the three strikes law. (*Id.* at p. 515.)

We first noted section 667, subdivision (c), provides that, " 'Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior felony convictions as defined in subdivision (d), the court shall adhere to each of the following,' " including section 667, subdivision (c)(6) and (7). (*Hendrix, supra,* 16 Cal.4th at p. 512.) Subdivision (c), (c)(6) and (7), is virtually identical to section 1170.12, subdivision (a), (a)(6) and (7), at issue in this case.

Section 667, subdivision (c)(6), provides: "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)." We concluded that section 667, subdivision (c)(6), applies to any current felony conviction. (*Hendrix, supra,* 16 Cal.4th at p. 512.) Moreover, subdivision

(c)(6) "provides that consecutive sentencing is mandatory for any current felony convictions 'not committed on the same occasion, and not arising from the same set of operative facts.' " (16 Cal.4th at p. 512.) "By implication, consecutive sentences are not mandatory under subdivision (c)(6) if the multiple current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.' " (*Id.* at pp. 512-513.)

Section 667, subdivision (c)(7), provides: "If there is a current conviction for more than one serious or violent felony as described in paragraph (6), the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law." We concluded that section 667, subdivision (c)(7), "applies when there is more than one current serious or violent felony," and that the reference to "paragraph (6)" in subdivision (c)(7) is to subdivision (c)(6). (*Hendrix, supra,* 16 Cal.4th at p. 513.) "So construed, 'more than one serious or violent felony as described in paragraph (6)' refers to multiple current convictions for serious or violent felonies 'not committed on the same occasion, and not arising from the same set of operative facts.' " (*Ibid.*; see § 667, subd. (c)(6).) "Thus, when a defendant is convicted of two or more current serious or violent felonies 'not committed on the same occasion, and not arising from the same set of operative facts,' not only must the court impose the sentences for these serious or violent offenses consecutive to each other, it must also impose these sentences 'consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law.' By implication, consecutive sentences are not mandated under subdivision (c)(7) if all of the serious or violent current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.' " (*Ibid.,* see § 667, subd. (c)(7).)

In *Hendrix,* the parties conceded that "all of the current serious and violent felony convictions were 'committed on the same occasion.' " *Hendrix, supra,* 16 Cal.4th at p. 514; *id.* at p. 516 (conc. opn. of George, C. J.); *id.* at p. 519, fn. 2 (conc. opn. of Mosk, J.).) Therefore, section 667, subdivision (c)(7) did not mandate that the trial court impose consecutive sentences. Rather, we held the trial court retained discretion to impose either concurrent or consecutive sentences. (*Hendrix, supra,* 16 Cal.4th at p. 514.)

### 2. *Section 654*

■ Section 654 precludes multiple punishment for a single act or omission, or an indivisible course of conduct. (§ 654; *People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552].) If, for example, a

defendant suffers two convictions, punishment for one of which is precluded by section 654, that section requires the sentence for one conviction to be imposed, and the other imposed and then stayed. (*People* v. *Miller, supra*, 18 Cal.3d at p. 886.) Section 654 does not allow any multiple punishment, including either concurrent or consecutive sentences. (*In re Wright* (1967) 65 Cal.2d 650, 652-655 [56 Cal.Rptr. 110, 422 P.2d 998] [trial court erred in imposing concurrent sentences for two convictions for which section 654 prohibited multiple punishment].)

Section 654 does not, however, preclude multiple punishment when the defendant's violent act injures different victims. (*People* v. *Miller, supra*, 18 Cal.3d at p. 885 [Even if "defendant entertained but a single principal objective during an indivisible course of conduct, he may nevertheless be punished for multiple convictions if during the course of that conduct he committed crimes of violence against different victims."]; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839] ["A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person."].) "Robbery is violent conduct warranting separate punishment for the injury inflicted on each robbery victim." (*People* v. *Champion* (1995) 9 Cal.4th 879, 935 [39 Cal.Rptr.2d 547, 891 P.2d 93]; *People* v. *Miller, supra*, 18 Cal.3d at p. 886 ["robbery of a victim at gunpoint has been held to be an act of violence such as to preclude application of section 654 in the case of multiple convictions involving multiple victims"].)

### B. *Analysis*

In *Hendrix*, we did not expressly discuss whether the analysis for determining if subdivision (a)(6) and (7)[4] requires consecutive sentencing is coextensive with the analysis for determining if section 654 permits multiple punishment. This issue, to which we now turn, has divided the Courts of Appeal. On the one hand, certain courts have expressly concluded that the analyses are not coextensive; others have reached the same result without specifically focusing on the precise role of section 654. (*People* v. *Bell* (1998) 61 Cal.App.4th 282, 285-286 [71 Cal.Rptr.2d 415]; *id.* at p. 294 [simultaneous attempted robbery and robbery of two victims on the "same occasion"]; *People* v. *Newsome* (1997) 57 Cal.App.4th 902, 912 [67

---

[4]Here, defendant robbed four victims. These robberies qualify as serious felonies within the meaning of section 1192.7, subdivision (c)(19). While it is not clear that the serious felonies referred to in subdivision (a)(7) are confined to those enumerated in section 1192.7, subdivision (c) (cf. § 1170.12, subd. (b)(1) & (2)), defendant here falls well within the purview of subdivision (a)(7). (See *Hendrix, supra*, 16 Cal.4th at p. 513.) The relevant language of subdivision (a)(6) and (7) is identical.

Cal.Rptr.2d 438] ["We do not read section 667, subdivision (c)(7) to require consecutive sentences, unless section 654 bars multiple punishment, for all current serious felony convictions regardless of when they were committed."]; *People* v. *Cartwright* (1995) 39 Cal.App.4th 1123, 1130-1131, 1140-1141 [46 Cal.Rptr.2d 351] [trial court had discretion to impose consecutive sentences when current offenses committed at the same time against different victims].)  ·

On the other hand, some courts have held that the analysis for determining if subdivision (a)(6) and (7) requires consecutive sentencing is coextensive with the analysis for determining if section 654 permits multiple punishment, or have reached results that appear consistent with this approach. (*People* v. *Ayon* (1996) 46 Cal.App.4th 385, 393 [53 Cal.Rptr.2d 853] ["three strikes law contemplates consecutive sentencing for each of the current strikes except for situations that call for a section 654 analysis"]; *People* v. *Carter* (1995) 41 Cal.App.4th.683, 685, 689 [48 Cal.Rptr.2d 726] [Defendant "convicted of the premeditated attempted murders of three victims on a single occasion" could be consecutively sentenced under section 654 for each count; under "section 667, subdivision (c), he must be consecutively sentenced."]; *People* v. *McKee* (1995) 36 Cal.App.4th 540, 546 [42 Cal.Rptr.2d 707] ["We believe that a traditional section 654 analysis is apposite in deciding whether multiple new felonies arise from the same set of 'operative facts' within the meaning of the 'three strikes' law."]; *People* v. *Martin* (1995) 32 Cal.App.4th 656, 664 [38 Cal.Rptr.2d 776] ["same set of operative facts" provision "applies the principle of section 654 to multiple current crimes"]; *id.* at p. 663 [Defendant "concedes, as he must, that the same occasion prong does not apply in this case, since [defendant] committed separate shoplifts at separate stores on separate dates."].)[5]

As noted above, here the Court of Appeal concluded that if section 654 did not preclude multiple punishment for defendant's current convictions,

[5]In some cases it is difficult to tell if the court focused on the issue of whether the analysis for determining if subdivision. (a)(6) and (7) requires consecutive sentencing is coextensive with the analysis for determining if section 654 permits multiple punishment, and, if so, which approach it adopted. (*People* v. *Samuels* (1996) 42 Cal.App.4th 1022, 1026 [50 Cal.Rptr.2d 157] ["Separate punishment for these crimes is entirely appropriate under section 654" and consistent with purpose of three strikes law. "Since each of the three current burglaries was perpetrated on a different victim, at different times, in separate residences," consecutive sentences are mandatory.]; *People* v. *Ingram* (1995) 40 Cal.App.4th 1397, 1409 [48 Cal.Rptr.2d 256], disapproved on other grounds in *People* v. *Dotson* (1997) 16 Cal.4th 547, 560, fn. 8 [66 Cal.Rptr.2d 423, 941 P.2d 56] ["Since each felony count of which defendant currently stands convicted arises from separate residential burglaries," consecutive sentences are mandatory.]; *People* v. *Turner* (1995) 40 Cal.App.4th 733, 738, fn. 3 [47 Cal.Rptr.2d 42] [Stated that trial court stayed the sentence on felony false imprisonment by violence count pursuant to section 654, and noted that "[t]he felony false imprisonment arose on the same occasion as the residential robbery. Hence, the trial judge was not required to impose a consecutive 25-year-to-life sentence. (§ 667, subd. (c)(6).)"].)

these convictions were not "committed on the same occasion," and did "not aris[e] from the same set of operative facts." The Attorney General urges us to adopt this reasoning. Defendant argues that the language "same occasion" should be given its ordinary meaning, that is, to refer to the temporal proximity between the defendant's current crimes.

At the outset, we note that subdivision (a)(6) and (7) does not refer to section 654. Nor does the phrase "same occasion" in subdivision (a)(6) and (7) parallel either the language of section 654, which refers to an "act or omission," or the language of cases interpreting section 654, which refer to an indivisible course of conduct and the defendant's intent and objective. (*People* v. *Latimer* (1993) 5 Cal.4th 1203, 1207-1208 [23 Cal.Rptr.2d 144, 858 P.2d 611]; *People* v. *Newsome, supra*, 57 Cal.App.4th at p. 912.)

Indeed, section 654 is irrelevant to the question of whether multiple current convictions are sentenced concurrently or consecutively. Rather, if a defendant commits two crimes, punishment for one of which is precluded by section 654, that section requires the sentence for one conviction to be imposed, and the other imposed and then stayed. (*People* v. *Miller, supra*, 18 Cal.3d at p. 886.) Section 654 does not allow *any* multiple punishment, whether concurrent or consecutive. (*In re Wright, supra*, 65 Cal.2d at p. 655 ["multiple sentences [are] forbidden by section 654, whether consecutive or concurrent"].) Thus, the question of whether sentences should be concurrent or consecutive is separate from the question of whether section 654 prohibits multiple punishment. (*People* v. *Norrell* (1996) 13 Cal.4th 1, 14 [51 Cal.Rptr.2d 429, 913 P.2d 458] (conc. and dis. opn. of Arabian, J.) superseded by statute ["Section 654, by its language, prohibits multiple punishment. That is all. It does not address the question of sentencing discretion. . . ."].)

Moreover, the legislative and initiative versions of the three strikes law are the only Penal Code sections that use the term "same occasion." Nothing in either the language of subdivision (a)(6) and (7) or its legislative history suggests the electorate intended these words to have a special or peculiar import different from their ordinary, generally understood meaning. The phrase "committed on the same occasion" is commonly understood to refer to at least a close temporal and spatial proximity between two events, although it may involve other factors as well. Making mandatory consecutive sentences for those current crimes committed on *different* occasions is consistent with the focus of the three strikes law, which is recidivism. (Ballot Pamp., text of Prop. 184, Gen. Elec. (Nov. 8, 1994) p. 64 [The voters' stated intent in enacting section 1170.12 was "to ensure longer prison sentences and greater punishment for those who commit a felony and have

been previously convicted of serious and/or violent felony offenses."]; § 667, subd. (b); *People* v. *Newsome, supra,* 57 Cal.App.4th at p. 913.)

Accordingly, we conclude there are certain crimes that are "committed on the same occasion," such as committing a violent crime against multiple victims, for which subdivision (a)(6) and (7) does not mandate consecutive sentencing, even though section 654 does not preclude multiple punishment.

The result in *Hendrix* is consistent with the conclusion that the analysis for determining if subdivision (a)(6) and (7) requires consecutive sentencing is not coextensive with the analysis for determining if section 654 permits multiple punishment. That is because section 654 does not apply to robbery and attempted robbery convictions involving multiple victims, the crimes at issue in *Hendrix.* Thus, if crimes "not committed on the same occasion" were crimes to which section 654 did not apply, and crimes committed on the "same occasion" were crimes to which section 654 did apply, consecutive sentences would have been mandatory in *Hendrix* because section 654 did not apply to the defendant's crimes. We concluded, however, albeit based on the parties' concession, that consecutive sentences were not mandatory.

The Attorney General further argues that "subdivision[] (a)(6) and (a)(7), applying to both second- and third-strike cases, should be read in conjunction with [section 1170.12] subdivision (c)(2)(B),[6] which applies expressly to third-strike cases and refers to 'any other term,' thereby mandating consecutive sentences in third-strike cases as long as consecutive sentencing is permissible." As he acknowledges, we rejected a similar argument in *Hendrix, supra,* 16 Cal.4th at pages 514-515. We see no reason to do otherwise here.

We conclude the analysis for determining whether subdivision (a)(6) and (7) requires consecutive sentencing is not coextensive with the analysis for determining whether section 654 permits multiple punishment. Rather, the term "same occasion" refers at least to a close temporal and spatial proximity between the acts underlying the current convictions. Here, defendant entered a furniture store, robbed four victims, and left. His robberies were committed in one location, and were apparently brief in duration. They were committed essentially simultaneously against the same group of victims, i.e.,

---

[6]Section 1170.12, subdivision (c)(2)(B), provides: "The indeterminate term described in subparagraph (A) of paragraph (2) of this subdivision shall be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law. Any other term imposed subsequent to any indeterminate term described in subparagraph (A) of paragraph (2) of this subdivision shall not be merged therein but shall commence at the time the person would otherwise have been released from prison."

persons in the furniture store. While Stinson approached defendant, his criminal activity was not thereby interrupted, but merely continued with her as an additional victim. Nor was there any other event that could be considered to separate one "occasion" of robbery from another. Given the close temporal and spatial proximity of defendant's crimes against the same group of victims, they were clearly committed on the "same occasion," regardless of what additional factors may be found relevant in defining the precise parameters of this phrase in future cases.[7] Thus, even though section 654 would permit multiple punishment here, consecutive sentences were not mandated by subdivision (a)(6) and (7). Assuming consecutive sentences were not required under a statute other than the three strikes law, a point not addressed by the Attorney General, the trial court therefore retained discretion to impose either concurrent or consecutive sentences.[8]

In the alternative, the Attorney General argues that even assuming the phrase "same occasion" does not incorporate the principles embodied in section 654, defendant's robberies still did not occur on the "same occasion." In particular, the Attorney General argues that the language "not committed on the same occasion" should be interpreted to have the same meaning as the phrase "separate occasions" in section 667.6, subdivision (d).

■ At the time section 1170.12 was enacted in 1994, section 667.6, subdivision (d), provided (and continues to provide) in relevant part, "A full, separate, and consecutive term shall be served for each violation of [certain sex offenses] if the crimes involve separate victims or involve the same victim on separate occasions. [¶] In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his

[7]Because we conclude that defendant's current robbery convictions were committed on the "same occasion," we need not construe the language "arising from the same set of operative facts."

[8]In making such a decision, the trial court is guided by the criteria set forth in California Rules of Court, rule 425. Rule 425 provides:

"Criteria affecting the decision to impose consecutive rather than concurrent sentences include:

"(a) [Criteria relating to crimes] Facts relating to the crimes, including whether or not:

"(1) The crimes and their objectives were predominantly independent of each other.

"(2) The crimes involved separate acts of violence or threats of violence.

"(3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior.

"(b) [Other criteria and limitations] Any circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences, except (i) a fact used to impose the upper term, (ii) a fact used to otherwise enhance the defendant's prison sentence, and (iii) a fact that is an element of the crime shall not be used to impose consecutive sentences."

or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." As the Attorney General notes, section 667.6, subdivision (d), was amended to add the test for determining whether crimes were committed on "separate occasions" in response to this court's decision in *People* v. *Craft* (1986) 41 Cal.3d 554 [224 Cal.Rptr. 626, 715 P.2d 585]. *Craft* held that crimes are "committed on separate occasions only when they are separated by a period in which the defendant has lost or abandoned his opportunity to continue his attack." (*Id.* at p. 562; Stats. 1986, ch. 1431, § 2, p. 5129 ["It is the intent of the Legislature . . . to abrogate the decision in People v. Craft [citation], and to establish an objective test for determining whether sex crimes against a single victim occurred on separate occasions."].)

The Attorney General asserts that since both section 667.6, subdivision (d), and subdivision (a)(6) and (7) "share similar language, their meanings should be consistent. . . . Accordingly, . . . the analysis becomes whether the defendant had 'a reasonable opportunity to reflect' between the committed offenses. . . . [I]t becomes a factual finding as to the intent and objectives of the defendant. . . ." "Thus, the appropriate analysis is still very similar to the principles appropriate for a finding of separate intents or objectives under section 654." Here, the Attorney General argues, "the present offenses were not legally committed on the same occasion. . . . Clearly, [defendant] had a reasonable opportunity to reflect upon his actions between the robberies and nevertheless pursued additional victims."

At the outset, we note that the language of section 667.6, subdivision (d), which requires "A full, separate, and consecutive term . . . for each violation of [certain sex offenses] if the crimes involve separate victims or involve the same victim on separate occasions," demonstrates that the Legislature, and presumably the electorate, knew how to mandate consecutive sentences when there are, as in this case, separate victims to a crime. (*People* v. *Newsome*, *supra*, 57 Cal.App.4th at p. 912.)

Moreover, it is not clear how helpful the term "separate occasions," as defined in section 667.6, subdivision (d), is in interpreting the phrase "not committed on the same occasion" in subdivision (a)(6) and (7). In addition to section 667.6, subdivision (d), at the time section 1170.12 was enacted, the Legislature had used the term "separate occasions" in numerous other

statutes in the Penal and other codes.[9] It is apparent that these statutes do not consistently use the term "separate occasions" to refer to either the intent and objective of the defendant or the temporal proximity between the relevant events. Thus, even if the electorate intended the term "not committed on the same occasion" to have the same meaning as the phrase "separate occasions," it is not clear "separate occasions" has a consistent meaning. In particular, it is not at all clear the electorate was focusing on the meaning of that term as used in section 667.6, subdivision (d). Nothing in the ballot pamphlet or even the legislative history of the Legislature's version of the three strikes law supports such a conclusion.

■ For example, as noted above, former section 186.22, subdivision (e), provided that a " 'pattern of criminal gang activity' " means the commission, attempted commission, or solicitation of certain offenses, "provided . . . the offenses are committed on separate occasions, or by two or more persons." We have recently interpreted this language to mean that there must be "evidence of 'two or more' predicate offenses committed 'on separate occasions' *or* by evidence of such offenses committed 'by two or more persons' on the *same occasion.*' " (*People* v. *Loeun* (1997) 17 Cal.4th 1, 10 [69 Cal.Rptr.2d 776, 947 P.2d 1313], fn. omitted, last italics added.) In *Loeun*, we concluded that "when the prosecution chooses to establish the requisite 'pattern' by evidence of 'two or more' predicate offenses committed on a *single occasion* by 'two or more persons,' it can . . . rely on evidence of the defendant's commission of the charged offense and the contemporaneous commission of a second predicate offense by a fellow gang member." (*Ibid.*, italics added.) In so doing, we observed that "the

---

[9](See, e.g., former § 186.22, subd. (e) [" 'pattern of criminal gang activity' " means the commission, attempted commission, or solicitation of certain offenses, "provided at least one of those offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses are committed on separate occasions, or by two or more persons"]; § 186.26, subd. (b) ["Any adult who threatens a minor with physical violence on two or more separate occasions within any 30-day period with the intent to coerce, induce, or solicit the minor to actively participate in a criminal street gang . . . ."]; § 399.5, subd. (a) ["Any person owning or having custody or control of a dog trained to fight, attack, or kill is guilty of a misdemeanor . . . if, as a result of that person's failure to exercise ordinary care, the dog bites a human being, on two separate occasions or on one occasion causing substantial physical injury."]; former § 594.6 ["Every person who, having been convicted previously of vandalism [or certain other offenses] on two separate occasions . . . ."]; § 6243, subd. (a)(4) ["[o]ffenders convicted on two or more separate occasions"]; Civ. Code, § 3342.5, subd. (b) ["[w]henever a dog has bitten a human being on at least two separate occasions"]; Food & Agr. Code, § 61411.4, subd. (b) ["handler has failed on three separate occasions within a 12-month period to pay the producer the full price"]; Harb. & Nav. Code, § 6309.2 ["Before any ordinance may be adopted, the ordinance shall be published in its entirety on three separate occasions in a newspaper of general circulation . . . ."]; Veh. Code, § 13353, subd. (a)(3)(B) ["[t]wo or more suspensions or revocations of the person's privilege to operate a motor vehicle . . . for offenses which occurred on separate occasions"].)

commission of two acts violating the same penal provision (for example, two robberies) would satisfy the statutory requirement of 'two or more' predicate offenses so long as the robberies satisfied the further statutory requirement of having been committed 'on separate occasions, or by two or more persons.' " (*Id.* at p. 10, fn. 4.) While we were not addressing in *Loeun* the precise question of whether the language "separate occasions" in former section 186.22 referred to the meaning of "separate occasions" in section 667.6, subdivision (d), nothing in *Loeun* suggests such an interpretation. Rather, we appeared to make a distinction between crimes occurring seconds apart and involving two assailants, as in *Loeun*, and crimes not in close temporal and spatial proximity to one another. (*People* v. *Loeun, supra,* 17 Cal.4th at pp. 6,10, 14.) We did not examine whether the "defendant had a reasonable opportunity to reflect upon his or her actions." (§ 667.6, subd. (d); see *In re Elodio O.* (1997) 56 Cal.App.4th 1175, 1180 [66 Cal.Rptr.2d 95] ["prosecution adequately established a pattern of criminal activity by proving the commission of both the robbery and the assault with a deadly weapon . . . during a single incident involving multiple participants"]; *In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 1003 [279 Cal.Rptr. 236] ["The use of the disjunctive in defining 'pattern of criminal gang activity' means a pattern can be established by two or more incidents, each with a single perpetrator, or by a single incident with multiple participants committing one or more of the specified offenses."]; but see *In re Jose T.* (1991) 230 Cal.App.3d 1455, 1462 [282 Cal.Rptr. 75] ["Although 'separate occasions' is not defined in section 186.22, subdivision (e) . . . we may look to section 667.6, subdivision (d), for guidance."].)

Of course, we need not definitively construe the meaning of the language "separate occasions" in former section 186.22 in this case. We discuss cases interpreting that statute merely to illustrate that reference to the term "separate occasions," and in particular section 667.6, subdivision (d)'s definition of that term, is of only marginal assistance under these circumstances in construing the meaning of the phrase "not committed on the same occasion." Here, the crimes were so closely related in time and space, and committed against the same group of victims, that these factors alone compel us to conclude they occurred on the "same occasion." Hence, consecutive sentences were not mandatory under subdivision (a)(6) and (7).

We now turn to the issue of whether the trial court understood the scope of its discretion to impose either concurrent or consecutive sentences. The trial court imposed four consecutive terms of twenty-five years to life for the robbery convictions, stating, "I have very little discretion here. We have discretion in *Romero* . . . to do away with the prior when that would be an injustice [*sic*] to do so. Here it would neither be in the interest of justice to

strike a so-called strike and it would be abusive of the court's discretion, in my opinion . . . . In short, Mr. Deloza, unfortunately, you are the fellow that they had in mind when they passed this law. You have committed crime unabated since your youth. You are still fairly young . . . . You would not stop and did not stop and you kept on, kept on, kept on, regardless of what they did to you. You have been up to the joint twice, and that did not do you good. This is the one. It will be a crushing sentence, *but it would be unlawful for me to proceed in any other fashion.* As to count 1, the sentence of the court is as follows: He is sentenced, as prescribed by law[,] 25[] to life . . . In addition to and consecutive to that term, as to counts 2, 3 and 4, the sentences are 25 to life. *They must run consecutive to the term imposed on count 1 . . . ."*

It is clear that the trial court recognized it had discretion to strike a prior felony conviction pursuant to section 1385, and expressly declined to do so. The italicized language indicates, however, that the trial court misunderstood the scope of its discretion to impose concurrent sentences for defendant's current convictions, and erroneously believed consecutive sentences were mandatory. Therefore, the case is remanded to the trial court for resentencing.

## CONCLUSION

The judgment of the Court of Appeal is reversed, and the court directed to remand the case to the trial court for further proceedings consistent with this opinion.[10]

George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.

**MOSK, J.,** Concurring.—The superior court ordered 4 sentences of 25 years to life in prison, to run consecutively, plus 11 years, for a total of 111 years.

A question arises, which our remand for resentencing does not require us to answer: Is a sentence of 111 years in prison constitutional?

Choosing to address this question myself, I believe that the obvious answer is no: A sentence of 111 years in prison is impossible for a human being to serve, and therefore violates both the cruel and unusual punishments

---

[10]*People* v. *Ayon, supra,* 46 Cal.App.4th 385, *People* v. *Samuels, supra,* 42 Cal.App.4th 1022, *People* v. *Carter, supra,* 41 Cal.App.4th 683, *People* v. *Turner, supra,* 40 Cal.App.4th 733, *People* v. *McKee, supra,* 36 Cal.App.4th 540, and *People* v. *Martin, supra,* 32 Cal.App.4th 656, are disapproved to the extent they are inconsistent with this opinion.

clause of the Eighth Amendment to the United States Constitution and the cruel or unusual punishment clause of article I, section 17 of the California Constitution.

Regrettably, multicentury sentences are becoming commonplace and generally remain unchallenged. Certainly there is understandable revulsion directed toward a defendant who has committed numerous counts of illegal conduct. Not infrequently the charges are sexual in nature; that conduct appears to draw the monstrous sentences.

A prime example occurred in Oklahoma in *Robinson* v. *State* (Okla.Crim.App. Apr. 1, 1996) F94-1377. In 1994, a trial judge sentenced the defendant to 30,000 years in prison. In 1996, in an unpublished opinion, a bare majority of the appellate court upheld the conviction, without discussing the length of the sentence. However, the dissenting justices declared: "A sentence of this magnitude is shocking and absurd." (*Id.* (dis. opn. of Lane, J.).) They added: "We should work to regain the public's confidence in our penal system by implementing an honest system of imprisonment. If we don't, sentence 'inflation' will make a mockery of us all."(*Ibid.*)

What is the legal difference between prison sentences of 30,000 years and 111 years? The answer is: none. Both are impossible for a human being to serve.

If a trial court were to impose as a condition of probation that a defendant report to his probation officer once a week for 111 years, an appellate court would not hesitate to strike it down as impossible to meet. How then could it sustain a prison sentence of that length? The United States Supreme Court has declared that the "basic concept underlying the Eighth Amendment is nothing less than the dignity of man. While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized standards." (*Trop* v. *Dulles* (1958) 356 U.S. 86, 100 [78 S.Ct. 590, 597-598, 2 L.Ed.2d 630] (plur. opn. of Warren, C. J.).) This provision is aimed at something more than merely curbing punishment designed to inflict great physical pain. As Justice Marshall stated, "one of the primary functions of the cruel and unusual punishments clause is to prevent excessive or unnecessary penalties." (*Furman* v. *Georgia* (1972) 408 U.S. 238, 331 [92 S.Ct. 2726, 2773, 33 L.Ed.2d 346](conc. opn. of Marshall, J.).) He further recognized that "a penalty may be cruel and unusual because it is excessive and serves no valid legislative purpose." (*Ibid.*) The same is true under article I, section 17 of the California Constitution.

A grossly excessive sentence can serve no rational legislative purpose, under either a retributive or a utilitarian theory of punishment. It is gratuitously extreme and demeans the government inflicting it as well as the

individual on whom it is inflicted. Such a sentence makes no measurable contribution to acceptable goals of punishment.

What, then, is the answer if a defendant is convicted of numerous counts? The maximum sentence that should be imposed is one a defendant is able to serve: life imprisonment. In a particularly egregious case involving exceptionally numerous victims, the maximum could conceivably be life imprisonment without possibility of parole.

Once we declare century-plus sentences invalid, I am confident that the Legislature will act to provide appropriate life sentences. Such sentences would serve the purposes of punishment, would be constitutional, and would avoid making the judicial process appear oblivious to life expectancy tables. (Mosk, *State's Rights—and Wrongs* (1997) 72 N.Y.U. L.Rev. 552, 556-559 [Brennan Lecture].)

**KENNARD, J.,** Concurring.—I concur fully in the majority's holding that the voters who enacted the initiative version of the "Three Strikes" law have given trial courts discretion in cases such as this to decide whether to impose concurrent or consecutive sentences for defendant's four robbery convictions because those crimes were committed on the "same occasion." (Pen. Code, § 1170.12, subd. (a)(6).) I write separately to note the following:

At oral argument, the Attorney General contended that the purpose of the Three Strikes law, of which Penal Code section 1170.12 is a part, was to increase the existing punishments for repeat offenders, and that to interpret Penal Code section 1170.12 as not requiring consecutive sentences in this case would circumvent that goal.

I agree with the Attorney General that punishment, in general, should be commensurate with culpability and that repeat offenders deserve greater punishment. Our decision today upholds that principle. A jury convicted defendant of four counts of second degree robbery and found that in each robbery a principal was armed. The jury also found that defendant had two prior serious felony convictions, thus bringing defendant under the Three Strikes law. Had defendant not been subject to the Three Strikes law, his maximum possible term would have been nineteen years—five years for one robbery count (Pen. Code, § 213, subd. (a)(2)), three years total for the other three robbery counts (*id.*, 1170.1, subd. (a)), ten years for the two prior serious felony enhancements (*id.*, § 667, subd. (a)(1)), and one year for one arming enhancement (*id.*, § 12022, subd. (a)(1)) (the trial court stayed the other three arming enhancements). But because defendant's prior felony convictions subject him to the Three Strikes law, he faces substantially

greater punishment. Under the Three Strikes law, on resentencing defendant will be subject to a *minimum* term of 36 years to life if the trial court imposes concurrent sentences for all 4 robberies (4 sentences of 25 years to life (Pen. Code, § 1170.12, subd. (c)(2)(A)(ii)) imposed concurrently plus the 11 years of enhancements), and he will be subject to a *maximum* term of 111 years to life if the trial court in its discretion again imposes consecutive sentences for all 4 robberies (4 sentences of 25 years to life imposed consecutively plus the 11 years of enhancements). This is hardly lenient treatment.