Opinion
BAXTER, J.
When a defendant is sentenced under the three strikes law (Pen. Code, § 667, subds. (b)-(i))[1] because he has previously been convicted of one or more serious and/or violent felony offenses (§ 667, subds. (b), (c)), the three strikes provisions mandate that “[i]f there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to [this section].” (§ 667, *223 subd. (c)(6); hereafter sometimes subdivision (c)(6).)[2] By implication, consecutive sentences are not mandated under subdivision (c)(6) (or subd. (c)(7)) (see fn. 2, ante) if all of the current felony convictions are either “committed on the same occasion” or “aris[e] from the same set of operative facts.” (Deloza, supra, 18 Cal.4th at p. 591; Hendrix, supra, 16 Cal.4th at p. 513.)
In Deloza we construed the term “committed on the same occasion” in section 1170.12, subdivision (a)(6) (identical to the legislative version found in section 667, subdivision (c)(6)) (see fn. 1, ante) as “refer[ring] at least to a close temporal and spatial proximity between the acts underlying the current convictions.” (Deloza, supra, 18 Cal.4th at pp. 595, 599.) Because the defendant’s crimes in Deloza were clearly “committed on the same occasion” {id. at p. 596), consecutive sentencing was not mandated and hence we had no occasion to further construe the phrase “arising from the same set of operative facts” also found in section 1170.12, subdivision (a)(6).
In this case the Court of Appeal found that defendant’s current felony offenses were committed on the same occasion and arose from the same set of operative facts, thus permitting concurrent sentencing. We granted review to determine whether on these facts defendant’s offenses were committed on the same occasion, and if not, whether they also did not “aris[e] from the same set of operative facts” (subd. (c)(6)) such that the Court of Appeal erred in concluding consecutive sentences were not mandated.
I. Facts and Procedural Background
On March 19, 1996, at approximately 9:00 to 9:30 p.m., Joaquin Criner, a clerk at the Stater Brothers market at 1555 South Garey Avenue in Pomona, saw defendant leaving the store through a closed checkstand with a large *224 bottle of E&J brandy partially secreted under his jacket. Criner shouted the code word for shoplifting and he and the store’s manager chased defendant through the parking lot. Defendant swerved towards Richard Williams, an elderly man walking past the market, and either “pushed” or “grabbed” him, knocking Williams to the sidewalk and scattering his personal effects. Defendant then ran across South Garey Avenue, through a gas station, and got away while Criner was assisting Williams to his feet.
Sometime after 9:00 p.m. on the evening in question, Vincent Rojas and his wife (then fiancée) Elizabeth LaVastida were finishing dinner when one of their children indicated a man was in their backyard. Their dog, which was kept unleashed within the enclosed yard, began barking and their security light came on. Their home is at 1455 South Gibbs in Pomona, one block east and approximately one block north of the Stater Brothers market. At that time there was a large empty lot, as well as commercial buildings and residences, between the two locations. Children and others were known to take a shortcut through the vacant lot and over the wall behind the Rojas/ LaVastida house to get from the area of the market to the gated community in which they lived. LaVastida testified that to walk from their house to the market via the shortcut over the wall behind their house, and through the lot, took two or three minutes. The alternative route, following the streets for the two- to three-block walk between the two locations, took five minutes. The Rojas’s backyard was itself completely fenced in with a cinder block wall, wooden fence and gate.
Rojas entered his backyard and confronted defendant, who swung at Rojas with the brandy bottle, striking his elbow. Defendant attempted to flee, jumping over the backyard fence and breaking off the upper slats in the process. Rojas grabbed a shovel and, together with his dog, pursued defendant over the fence, chasing him down a long community driveway and finally tackling him to the ground on South Gibbs street. Meanwhile, LaVastida had called the police. She approached the two struggling men, holding a youth’s Little League baseball bat, and attempted to assist Rojas, trying to protect him from defendant who was swinging the brandy bottle while being held from behind by Rojas. Defendant swung the bottle at LaVastida, hitting her in the head and causing her to become dazed, start to lose consciousness, and fall to the ground. The police arrived, arrested defendant, and brought Criner to the scene to see if he could identify the suspect. Criner testified approximately 15 or 20 minutes had elapsed from the time of the theft to the time he was brought to the scene of defendant’s detention and made his positive identification.
Based on the foregoing evidence, defendant was convicted by a jury of felony petty theft with a prior conviction (§ 666), assault upon Rojas (§ 240, *225 reduced to a misdemeanor on the trial court’s own motion), felony assault with a deadly weapon (the bottle) or with force likely to produce great bodily injury upon LaVastida (§ 245, subd. (a)(1)), and misdemeanor battery upon Williams (§ 242). In a bifurcated proceeding, the jury found defendant had suffered prior felony convictions for the unlawful taking or driving of a vehicle (1980), attempted robbery (1985), and three separate convictions of robbery (1985, 1987, 1988).
The trial .court concluded that under the applicable three strikes law (§ 667, subds. (b)-(i)), it was required to sentence defendant consecutively on the two current felony counts. It sentenced defendant to an aggregate term of 66 years to life, including two consecutive 25-year-to-life terms for the felony petty theft with a prior and the aggravated assault convictions; three 5-year enhancements, one for each of his three prior serious felony convictions (§ 667, subd. (a)); and two consecutive six-month terms for the misdemeanor assault and battery convictions. The court struck all one-year enhancements for the prior prison terms. (§ 667.5, subd. (b).)
On appeal, defendant challenged only his sentence, contending among other things that the sentencing court erred in concluding consecutive sentences were mandatory under subdivision (c)(6) because his current offenses were assertedly “committed on the same occasion” and “[arose] from the same set of operative facts.” The Court of Appeal agreed, vacating the sentence imposed by the trial court and remanding the case for resentencing. The People filed a petition for review, which was granted, and this court thereafter ordered the Court of Appeal to vacate its decision and reconsider the matter in light of Deloza, supra, 18 Cal.4th 585. The Court of Appeal thereafter issued a new opinion in which defendant’s sentence was again vacated and the matter remanded for resentencing. We granted the People’s second petition for review to determine the proper application of the relevant statutory language of subdivision (c)(6) to the facts of this case.
II. Discussion
A. Same Occasion
In Deloza, supra, 18 Cal.4th 585, the defendant entered a furniture store with an armed companion, who pointed a gun at a salesperson while the defendant took $1,200 from the cash register, $200 from the wallet of another salesperson, and the purse of a female customer who approached him, before the two fled. (Id. at p. 589.) The defendant was convicted of four counts of second degree robbery. On those facts we held the offenses were committed on the same occasion within the meaning of section 1170.12, *226 subdivision (a)(6) and (7) (see also § 667, subd. (c)(6) and (7); fn. 1, ante). (Deloza, supra, 18 Cal.4th at p. 594.)
In reaching that conclusion, we rejected an argument that the analysis for determining whether section 1170.12, subdivision (a)(6) and (7) (see also § 667, subd. (c)(6) and (7)) requires consecutive sentencing is coextensive with the test for determining whether section 654 permits multiple punishment. (Deloza, supra, 18 Cal.4th at pp. 591-595.) We explained that section 654 is irrelevant to the question of whether multiple current convictions are sentenced concurrently or consecutively under the three strikes law, because section 654 does not allow any multiple punishment, whether concurrent or consecutive, and the analyses performed under the two statutes are entirely separate. (18 Cal.4th at p. 594.)[3] We also rejected an argument that “same occasion,” as used in the three strikes mandatory-consecutive-sentencing provision, is necessarily closely related to the definition of “separate occasion” found in section 667.6, subdivision (d) (providing for full, separate, consecutive terms for certain sex offenses involving separate victims or the same victim on “separate occasions”), and that both phrases should therefore be construed as reflecting a common legislative intent. (Deloza, supra, 18 Cal.4th at pp. 596-599.) We observed that because the term “separate occasions” appears in a variety of statutes, and does not appear to have a consistent meaning, “section 667.6, subdivision (d)’s definition of that term[] is of only marginal assistance under these circumstances in construing the meaning of the phrase ‘not committed on the same occasion.’ ” (Id. at p. 599.)
Turning to the phrase “same occasion” found in section 1170.12, subdivision (a)(6) (see also § 667, subd. (c)(6)), we next explained in Deloza that “the legislative and initiative versions of the three strikes law are the only Penal Code sections that use the term ‘same occasion.’ Nothing in either the language of subdivision (a)(6) and (7) or its legislative history suggests the electorate intended these words to have a special or peculiar import different from their ordinary, generally understood meaning. The phrase ‘committed on the same occasion’ is commonly understood to refer to at least a close temporal and spatial proximity between two events, although it may involve other factors as well. Making mandatory consecutive sentences for those current crimes committed on different occasions is consistent with the focus of the three strikes law, which is recidivism. (Ballot Pamp., text of Prop. *227 184, Gen. Elec. (Nov. 8, 1994) p. 64 [The voters’ stated intent in enacting section 1170.12 was ‘to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.’]; § 667, subd. (b); People v. New-some [(1997)] 57 Cal.App.4th [902,] 913 [67 Cal.Rptr.2d 438].)” (Deloza, supra, 18 Cal.4th at pp. 594-595, first italics added.)
Applying our construction of the phrase “committed on the same occasion” to the facts there before us, we explained in Deloza that “defendant entered a furniture store, robbed four victims, and left. His robberies were committed in one location, and were apparently brief in duration. They were committed essentially simultaneously against the same group of victims, i.e., persons in the furniture store. While [the patron whose purse was stolen] approached defendant, his criminal activity was not thereby interrupted, but merely continued with her as an additional victim. Nor was there any other event that could be considered to separate one ‘occasion’ of robbery from another. Given the close temporal and spatial proximity of defendant’s crimes against the same group of victims, they were clearly committed on the ‘same occasion,’ regardless of what additional factors may be found relevant in defining the precise parameters of this phrase in future cases.” (Deloza, supra, 18 Cal.4th at pp. 595-596, fn. omitted.)
Because the defendant’s crimes in Deloza were committed in one location, were brief in duration, and were committed essentially simultaneously against the same group of victims, we had no difficulty concluding they were “committed on the same occasion” within the meaning of section 1170.12, subdivision (a)(6) and (7) (see also § 667, subd. (c)(6) and (7)), and that consecutive sentencing was therefore not mandated. (Deloza, supra, 18 Cal.4th at p. 596.) Accordingly, we had no occasion in Deloza to further construe the phrase “arising from the same set of operative facts” as used in the three strikes mandatory-consecutive-sentencing provision. {Id. at p. 596, fn. 7.)
In this case, if defendant’s current felony offenses of petty theft with a prior and aggravated assault were “committed on the same occasion,” then, as in Deloza, consecutive sentencing would not be mandatory under subdivision (c)(6), and we would need not further construe the language “arising from the same set of operative facts” also used in the statute. The Court of Appeal, with one justice dissenting, concluded that defendant’s theft of a bottle of brandy from the market and subsequent assault on LaVastida were committed on the same occasion within the meaning of the statute. The majority, citing Deloza, supra, 18 Cal.4th 585, stated: “[Defendant’s] offenses all were committed within a short span of time, some five to 15 *228 minutes, and within ‘close spatial proximity’—in the market and the area immediately adjacent to it.”
Like the dissenting justice below, we disagree with the Court of Appeal majority, and conclude instead that defendant did not commit the felony assault upon LaVastida on “the same occasion” (subd. (c)(6)) as the petty theft from the market. As noted, in Deloza, the four robberies occurred almost simultaneously. Similarly, in Hendrix, supra, 16 Cal.4th 508, the defendant robbed or attempted to rob four victims seated at a table in a mall, demanded money at gunpoint, backed out of the room briefly, returned to warn them not to move, then left. We concluded on the facts of Hendrix that the crimes had been committed on the “same occasion,” a point ultimately conceded by the parties in that case. (Id. at pp. 510-511.)
Here, in contrast, defendant fled the scene of his first crime, the theft of a bottle of brandy from a market. He was seen running across the street and through a gas station. He likely followed the shortcut through the vacant lot, over the wall behind the Rojas/LaVastida house, and into their fully enclosed backyard. There was testimony it would have taken defendant two or three minutes to walk that distance, though he undoubtedly traveled the route at a quickened pace. The facts taken as a whole support an inference that defendant committed his second offense at the Rojas/LaVastida home, a one-to three-block distance from the site of his first crime (depending on whether he took the shortcut or followed the city streets), and most likely within two or three minutes of his theft from the market. Although he was fleeing from the first crime scene and may have been following a known neighborhood shortcut, he nonetheless chose to trespass into the Rojas/LaVastida house’s fully enclosed backyard. At the point at which he entered the backyard, defendant was no longer being pursued by any store personnel (although we do not know whether he was aware of that). In theory, he could have fled along a public street or thoroughfare and possibly escaped apprehension. Instead, he chose to commit new and separate crimes during his flight. The instant case thus involves additional factors not present in Deloza and Hendrix: two separate locations (a market and a residence one to three blocks away), and two entirely separate groups of victims (the employees and a patron of the market, and Rojas and LaVastida, who had no connection to the first crime). Nor can it be said that defendant’s crimes were committed simultaneously (cf. Deloza, supra, 18 Cal.4th 585) or through the same criminal act directed against multiple victims (cf. Hendrix, supra, 16 Cal.4th 508).
Contrary to the suggestion of the dissent, we do not believe the facts of this case warrant invoking the “escape rule” (dis. opn. of Kennard, J., post, *229 at p. 241), as defendant did not act with an accomplice in perpetrating the theft from the market, nor did the crime result in a felony murder. Once again, we observed in Deloza that “[n]othing in either the language of [the three strikes law’s mandatory consecutive-sentencing provision] or its legislative history suggests the electorate intended these words [‘same occasion’] to have a special or peculiar import different from their ordinary, generally understood meaning. The phrase ‘committed on the same occasion’ is commonly understood to refer to at least a close temporal and spatial proximity between two events . . . .” (Deloza, supra, 18 Cal.4th at p. 594.) If there is no ambiguity, the “usual and ordinary meaning” of the term “same occasion” used in subdivision (c)(6) must control. (People v. Loeun (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313].) Applying the commonly understood meaning of that term to these facts, we find that the theft from the market, and the aggravated assaults subsequently committed at the Rojas/LaVastida home, were not committed on the same occasion within the meaning of subdivision (c)(6). Even if the test were whether the defendant had “a reasonable opportunity for calm reflection” between commission of the two offenses (dis. opn. of Kennard, J., post, at p. 241), the facts would still support an inference that after fleeing from the market, defendant did have sufficient opportunity to reflect upon the additional penal consequences of his decision to trespass into a fully enclosed private backyard, and thereafter assault the homeowners.
We do not believe it was intended that the mandatory consecutive-sentencing provision of the three strikes law not apply to the commission of different crimes perpetrated against different groups of victims merely because the later crimes occurred while the defendant was still in flight from the initial crime scene. No principle of criminal law shields a defendant from conviction of all such offenses, nor does section 654 prohibit multiple punishment for crimes of violence against multiple victims. (People v. King (1993) 5 Cal.4th 59, 78 [19 Cal.Rptr.2d 233, 851 P.2d 27].) We find no basis for concluding the voters who enacted the initiative version of the three strikes law (or the drafters of the virtually identical legislative version) nonetheless intended that all offenses a defendant chooses to commit while still in flight from the first crime scene should be excluded from the scope of the mandatory consecutive-sentencing provision.
Applying the “close spatial and temporal proximity” test of Deloza, we conclude the aggravated assault upon LaVastida, perpetrated two to three minutes or more after the theft from the market, at a location one to three blocks away (depending upon the flight route taken), was “not committed on the same occasion” as the theft within the meaning of section 667, subdivision (c)(6). Accordingly, we must now reach the question whether *230 these offenses did or did not “aris[e] from the same set of operative facts.” (Ibid.)
B. Same Set of Operative Facts
Observing that Deloza provides no guidance as to the meaning of the phrase “same set of operative facts,” the Court of Appeal majority below concluded these offenses did arise from the same set of operative facts. The court characterized the aggravated assault upon LaVastida as an “escape attempt which immediately followed” the theft from the market. The court went on to reason:
“The Oxford English Dictionary (2d ed. CD-ROM) provides the relevant definition of the word ‘set’:
“ ‘A number of things connected in temporal or spatial succession or by natural production or formation.’
“Similarly, Webster’s Third New International Dictionary (1981) at page 2078 defines ‘set’ as:
“ ‘A number of things naturally connected by location or order in time.’
“These definitions show that ‘set’ as used in the phrase ‘same set of operative facts’ imports the same concepts of closeness in time and location as the phrase ‘same occasion,’ and also adds an implication of ‘natural connection’ between the facts of several crimes.
“Thus the definitions of the words used in section 667, subdivision (c)(6) and (7), suggest that consecutive sentences are not required where the several current crimes occurred close together in space and time, and had some connection between them.” (Italics added.)
We cannot agree with the Court of Appeal’s construction of the term “same set of operative facts,” nor with its conclusion that these offenses fell within the meaning of that phrase. In construing the relevant provisions of subdivision (c)(6), “as with any statute, we strive to ascertain and effectuate the Legislature’s intent.” (People v. Loeun, supra, 17 Cal.4th at p. 8.) Because statutory language generally provides the most reliable indicator of that intent (Hsu v. Abbara (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804]), we turn to the words themselves, giving them their “usual and ordinary meanings” and construing them in context. (People v. Loeun, supra, 17 Cal.4th at p. 9). “ ‘If there is no ambiguity in the language *231 of the statute, . . the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs.” ’ ” (Ibid.)
We do not disagree with the Court of Appeal’s understanding of the plain and ordinary meaning of the words “same set” found in subdivision (c)(6). Given the definitions provided, we agree it appears reasonable to conclude those words import the same concepts of closeness in time and space as the phrase “same occasion” found in subdivision (c)(6). But the Court of Appeal failed to attach any significance whatsoever to the modifier “operative,” which also appears in the phrase “same set of operative facts.” The relevant definition of the term “operative” from Webster’s Third New International Dictionary (1993) is “producing an appropriate or designed effect; exerting force or influence.” (Id. at p. 1581.) Similarly, the Oxford English Dictionary (2d ed. 1989) defines “operative” as “active in producing, or having the power to produce, effects; exerting force, energy, or influence.” (Id. at p. 850.)
The ordinary and common definition of “operative”—producing an appropriate or desired effect; exerting force or influence—is consistent with prior judicial constructions of that term finding it refers to the facts of a case which prove the underlying current charged offense. As the court in People v. Durant (1999) 68 Cal.App.4th 1393 [81 Cal.Rptr.2d 207] (Durant) explained: “the phrase ‘the same set of operative facts’ has been judicially interpreted in collateral estoppel and election of remedies cases to refer to those facts which prove a criminal or civil defendant’s liability for a particular wrongful act. (People v. Nunez (1986) 183 Cal.App.3d 214, 221 [228 Cal.Rptr. 64]; General Ins. Co. v. Mammoth Vista Owners’ Assn. (1985) 174 Cal.App.3d 810, 828 [220 Cal.Rptr. 291]; People v. Superior Court (Jackson) (1975) 44 Cal.App.3d 494, 502 [118 Cal.Rptr. 702].) Generally, ‘[w]here the language of a statute uses terms that have been judicially construed, “ ‘the presumption is almost irresistible’ ” that the terms have been used “ ‘in the precise and technical sense which had been placed upon them by the courts.’ ” [Citations.] This principle applies to legislation adopted through the initiative process. [Citation.]’ (People v. Weidert (1985) 39 Cal.3d 836, 845-846 [218 Cal.Rptr. 57, 705 P.2d 380].) While we have not found this exact phrase construed in other statutes, it has often been used by courts to refer to the facts of a case which prove the underlying act upon which a defendant had been found guilty. This meaning comports with the finding made by the court in People v. Martin (1995) 32 Cal.App.4th 656, 663-664 [38 Cal.Rptr.2d 776], disapproved on another point in People v. Deloza, supra, 18 Cal.4th at page 600, footnote 10, that although ‘. . .the term “operative facts” has not always been used in precisely the same way [citations], [the court] believe[d] that in section 667, subdivision (c)(6) [such *232 term] relates to the facts underlying the current charged offenses.’ (People v. Martin, supra, [32 Cal.App.4th] at pp. 663-664.) We agree and thus believe that consistent with its common usage the enactors of sections 667, subdivisions (b) through (i) and 1170.12 used the phrase ‘the same set of operative facts’ with such general meaning in mind.” (Durant, supra, 68 Cal.App.4th at p. 1405.)
In Durant, the defendant was convicted of burglary and two counts of attempted burglary, and the trial court imposed concurrent sentences for the three current convictions under the “same occasion/same operative facts” exception to the mandatory consecutive-sentencing requirement of the three strikes law. The Court of Appeal reversed and remanded for resentencing, finding the trial court had imposed an unlawful sentence because the three crimes did not come within the “same occasion/same operative facts” exception despite the fact that defendant had committed all the offenses at the same general location (a housing complex), against what arguably might be deemed the same group of victims (persons in the housing complex whom he burglarized or attempted to burglarize), and although the offenses occurred in succession without intervening events. The Durant court emphasized that the two attempted burglaries, by their nature and elements, were completed before defendant committed the completed burglary, and that the crimes did not occur on the “same occasion” as that term is commonly understood. Nor did the duration of the crimes overlap, each being distinct and completed when defendant attempted to enter or successfully entered a residence and then left to go burglarize another residence. (Durant, supra, 68 Cal.App.4th at pp. 1396-1400.)
The Durant court, applying the above described definition of “same set of operative facts” to the facts before it, reasoned that “In applying this definition to any particular case, the nature and elements of the current charged offense becomes highly relevant. For example, when a robbery is charged, its continuous nature, its elements and the facts used to support those elements are the ‘operative facts’ underlying the commission of that crime. If another offense is committed while the facts underlying that robbery are unfolding, it will necessarily arise from the same set of operative facts as the original robbery. However, where the elements of the original crime have been satisfied, any crime subsequently committed will not arise from the same set of operative facts underlying the completed crime; rather such crime is necessarily committed at a different time. For instance, with the crime of burglary, where the offense is complete when there is an entry into a structure with felonious intent, ‘regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is committed’ (People v. Montoya *233 (1994) 7 Cal.4th 1027, 1041-1042 [31 Cal.Rptr.2d 128, 874 P.2d 903]), the commission after the first burglary of a crime or burglary of another structure necessarily will arise out of different operative facts than those underlying the original offense.” (Durant, supra, 68 Cal.App.4th at pp. 1405-1406.)
We find the rationale of Durant instructive on the meaning and probable intent behind use of the phrase “same set of operative facts” in section 667, subdivision (c)(6). We read the mandatory consecutive-sentencing provision of the three strikes law as follows: If there are two or more current felony convictions “not committed on the same occasion,” i.e., not committed within close temporal and spatial proximity of one another, and “not arising from the same set of operative facts,” i.e., not sharing common acts or criminal conduct that serves to establish the elements of the current felony offenses of which defendant stands convicted, then “the court shall sentence the defendant consecutively on each count” pursuant to subdivision (c)(6). Conversely, where a sentencing court determines that two or more current felony convictions were either “committed on the same occasion” or “aris[e] from the same set of operative facts” as we have construed those terms in Deloza and the instant case, consecutive sentencing is not required under the three strikes law, but is permissible in the trial court’s sound discretion.
In concluding in Deloza that the four robberies of which the defendant was convicted were all committed on the “same occasion,” we acknowledged that “additional factors may be found relevant in defining the precise parameters of this phrase in future cases.” (Deloza, supra, 18 Cal.4th at p. 596, fn. omitted.) Similar words of caution are in order respecting our interpretation of the phrase “same set of operative facts” herein. Durant suggests that the nature and elements of the current charged offenses—for example, the extent to which common acts and elements of such offenses unfold together or overlap, and the extent to which the elements of one offense have been satisfied, rendering that offense completed in the eyes of the law before the commission of further criminal acts constituting additional and separately chargeable crimes—are additional factors the court must consider in determining whether multiple current crimes arose from the “same set of operative facts” when the offenses are committed more than seconds apart. (Durant, supra, 68 Cal.App.4th at p. 1406.) There may be others.
Returning to the facts of this case, we cannot agree with the Court of Appeal majority that defendant’s current offenses “[arose] from the same set of operative facts.” Defendant’s initial crime was the shoplifting theft of a bottle of brandy from a market. Although still in flight from the crime *234 scene, he thereafter chose to commit new and different offenses: the trespass into the Rojas/LaVastida backyard, and the ensuing assaults against Rojas and LaVastida. The first crime involved an act of theft directed at one group of victims, the second involved assaultive conduct directed at an unrelated pair of victims. The two criminal episodes were separated spacially by at least one to three city blocks, and temporally by two to three or more minutes (from the time defendant stole the brandy from the market until the point he committed the aggravated assault upon LaVastida after having fled from the first crime scene, trespassed into the Rojas/LaVastida backyard, and fled again, chased by Rojas out of the yard and down a long driveway to the street, where he hit LaVastida with the bottle before being subdued).
On these facts we conclude that defendant’s felony assault upon LaVastida did not arise out of the “same set of operative facts” as the theft from the market. Because defendant’s multiple current felony convictions neither were committed on the same occasion within the meaning of Deloza nor arose from the same set of operative facts, the trial court correctly concluded it was mandated by subdivision (c)(6) to sentence consecutively.
III. Conclusion
The judgment of the Court of Appeal is reversed and the matter remanded to that court for further proceedings consistent with the views expressed herein.
George, C. L, Chin, 1, and Brown, L, concurred.

All further statutory references are to the Penal Code unless otherwise indicated.
We have observed that “[t]he relevant portions of the initiative version of the three strikes law adopted by the voters in November 1994 (§ 1170.12), and the March 1994 legislative version (§ 667, subds. (b)-(i)), are virtually identical.” (People v. Deloza (1998) 18 Cal.4th 585, 588-589, fn. 3 [76 Cal.Rptr.2d 255, 957 P.2d 945] (Deloza) Here, defendant’s crimes were committed in 1996. The charging and sentencing documents in the record reference both the legislative and initiative versions of the applicable three strikes sentencing provisions. The Court of Appeal analyzed the issue herein with reference to the legislative version of the three strikes law, and the parties have done so as well in their briefs. For the sake of consistency and ease of reference we shall likewise refer to the legislative version, although the principles we discuss herein are equally applicable to cases arising under either version of the three strikes law.

The identical mandatory-consecutive-sentencing rule applies where there are current convictions for more than one serious or violent felony (§ 667, subd. (c)(7)), although in such instances “when a defendant is convicted of two or more current serious or violent felonies ‘not committed on the same occasion, and not arising from the same set of operative facts,’ not only must the court impose the sentences for these serious or violent offenses consecutive to each other, it must also impose these sentences ‘consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law.’ ” (People v. Hendrix (1997) 16 Cal.4th 508, 513 [66 Cal.Rptr.2d 431, 941 P.2d 64] {Hendrix), italics added.)
As will be explained, here defendant was convicted of one current nonserious or violent felony (petty theft with a prior) and one current violent felony (assault with a deadly weapon; see § 1192.7, subd. (c)(23) [classifying any felony committed with personal use of a deadly weapon as a violent felony]). Accordingly, defendant’s three strikes sentence was governed by section 667, subdivision (c)(6).

We explained further in Deloza that there are certain crimes committed on the “same occasion” for which the three strikes law (§§ 1170.12, subd. (a)(6) and (7), 667, subd. (c)(6) and (7)) does not mandate consecutive sentencing, even though section 654 does not preclude multiple punishment. (Deloza, supra, 18 Cal.4th at p. 595.) We gave as an example “committing a violent crime against multiple victims.” (Ibid.)