Filed 3/18/13  P. v. Foster CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B237200 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA112529) |
| v. | |
| MELVYN KENARD FOSTER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul A. Bacigalupo, Judge.  Affirmed in part and reversed in part; sentence vacated and remanded with directions.

Marilyn Drath, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Lawrence M. Daniels and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Melvyn Foster appeals from a judgment entered after a jury convicted him of criminal threats, attempted criminal threats, possession of a firearm by a felon, possession of ammunition by a felon, and two counts of assault with a firearm. The jury found firearm enhancement allegations to be true. The trial court found prior conviction allegations to be true. The court denied Foster's motion to strike his four prior serious or violent felony convictions and sentenced him under the Three Strikes Law to 100 years to life in prison. Foster contends the trial court made errors in sentencing him. We agree and vacate his sentence and remand the matter for a new sentencing hearing.

## BACKGROUND

On May 21, 2010, Sharon Johnson went to pick up some personal belongings at a home she had recently shared with her ex-boyfriend, defendant Foster. Johnson's friend, Lynette Simpson, drove Johnson to the home. Foster no longer lived there either. He had moved to a new residence with another girlfriend.

Simpson and Johnson were sitting in Simpson's car, getting ready to leave Johnson and Foster's former residence, when Foster approached Simpson's car. He had been a passenger in a car which had pulled up and stopped directly behind Simpson's car. Foster reached into the car through the front passenger side window and took Simpson's car keys out of the ignition. Simpson, who was sitting in the driver seat, grabbed the keys back from Foster. As Simpson started to get out of the car, Foster pointed a small silver handgun between Simpson's and Johnson's faces. Johnson was sitting in the front passenger seat of Simpson's car. The gun was about two to three inches away from Simpson's face. Foster told Simpson if she wanted to live she should not move "because he was prepared to die." Johnson started screaming and crying and pleading with Simpson that she should listen to Foster and stay in the car. Simpson complied.

Foster and Johnson began arguing. Foster pointed the gun down in front of Johnson, level with her chest or waist. After about five or six minutes of discussion with Johnson about the distribution of their personal property, Foster walked away. He entered the back seat of the car that was parked behind Simpson and the car drove away. Simpson made a 911 call and the police responded to the scene.

2

On May 26, 2010, five days after the assaults on Simpson and Johnson, Foster told Francois Kerkhoff he was going to shoot him and his dogs. As set forth above, when Foster moved out of the residence he shared with Johnson, he moved in with another girlfriend. Kerkhoff lived next door to Foster's girlfriend. Foster and Kerkhoff were in a dispute because Kerkhoff's dog had injured Foster's dog and Foster wanted Kerkhoff to pay a portion of the veterinarian's bill. On May 26, Kerkhoff was in his backyard when Foster approached the fence separating their yards and threatened to shoot Kerkhoff and his dogs. Foster was holding a small aluminum-colored handgun in his hand. Kerkhoff made a 911 call and then waited outside in his front yard for the police to arrive.

The police responded to the scene and searched the residence Foster shared with his girlfriend. In a bedroom, an officer discovered a small silver handgun in a dresser drawer underneath some clothes. Next to the gun was a magazine loaded with ammunition.

In front of the jury, Foster stipulated he had been convicted of a felony. Before the verdicts were read, Foster waived jury trial on prior conviction allegations.

The jury found Foster guilty of criminal threats against Lynette Simpson (Pen. Code,[1] § 422; count 1); attempted criminal threats against Francois Kerkhoff (§§ 422 & 664; count 3); possession of a firearm by a felon (former § 12021, subd. (a)(1); count 4); possession of ammunition by a felon (former § 12316, subd. (b)(1); count 5); assault with a firearm on Simpson (§ 245, subd. (a)(2); count 6); and assault with a firearm on Sharon Johnson (count 7).[2] On counts 1, 3, 6 and 7, the jury found true the special allegation that Foster used a firearm within the meaning of section 12022.5, subdivision (a).

The trial court held a bench trial on the prior conviction allegations and the prosecution submitted evidence to prove the prior convictions. The trial court found true that Foster had sustained four prior convictions of serious or violent felonies (assault with

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

[2] Count 2 for dissuading a witness from testifying (§ 136.1, subd. (a)(1)) was dismissed before the case went to the jury.

3

a firearm) within the meaning of the Three Strikes law. (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d).) The court also found true that Foster had sustained other felony convictions for obstructing an officer in the performance of duty by threat or violence (§ 69) and for possession of a controlled substance (Health & Saf. Code, § 11350). Foster filed a motion to dismiss the prior strike allegations under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, which the trial court denied.

The trial court sentenced Foster to 100 years to life in prison: On count 6 for assault with a firearm on Simpson, 25 years to life, plus the 10-year high term for the firearm enhancement under section 12022.5, subdivision (a); on count 7 for assault with a firearm on Johnson, a consecutive term of 25 years to life;[3] on count 3 for attempted criminal threats against Kerkhoff, a consecutive term of 25 years to life, plus the 10-year high term for the firearm enhancement under section 12022.5, subdivision (a); and a consecutive five-year term for the prior serious felony enhancement under section 667, subdivision (a)(1). The court imposed and stayed the sentences on counts 1, 4 and 5.

## DISCUSSION

### I.     Consecutive Sentencing

Foster asserts the trial court did not understand it had discretion to sentence him to concurrent terms on counts 6 and 7 (the assaults with a firearm on Lynette Simpson and Sharon Johnson) under the Three Strikes law. He contends the matter must be remanded for a new sentencing hearing due to this prejudicial error. Based on our review of the record it appears the court erroneously believed consecutive sentences were mandatory. Accordingly, we vacate Foster's sentence and remand the matter for a new sentencing hearing.[4]

---

[3] The trial court imposed and stayed the 10-year high term on the firearm enhancement under section 12022.5, subdivision (a). As Foster acknowledges, it was improper for the court to stay the term for the firearm enhancement. "[A]n additional and consecutive term of imprisonment" must be imposed and this enhancement allegation may not be stricken. (§ 12022.5, subds. (a) & (c).)

[4] Foster frames the issue on appeal as ineffective assistance of counsel. He argues his counsel rendered ineffective assistance in failing to object to, and set forth the law

Consecutive sentences are not mandatory under section 667, subdivision (c)(6), where multiple crimes are committed on the same occasion or arise from the same set of operative facts. (*People v. Deloza* (1998) 18 Cal.4th 585, 591; section 667, subd. (c)(6) ["If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count . . . ."].) Thus, the trial court in this case had discretion to impose either consecutive or concurrent terms on counts 6 and 7. (*People v. Deloza*, *supra*, 18 Cal.4th at pp. 591, 596.)

In discussing its decision to sentence Foster consecutively on counts 6 and 7, the trial court stated: "So the one legal issue that I have is—well, there's a number of legal issues here as it relates to concurrent versus consecutive sentencing. *And, unfortunately for Mr. Foster, since there's multiple victims— and under the Three-Strikes law, the spirit is to impose consecutive sentencing.* [¶ . . . ¶] As to the assault behavior, I believe that's consecutive sentencing. [¶] As to the 422 [criminal threats against Simpson; count 1], though, since his conduct was part and parcel of the assault, I'd like counsel to address the subject of concurrent sentencing on the criminal threat in that—as opposed to consecutive sentencing, which is fairly huge. It's 50 years versus 75. And we still haven't even gotten to the enhancements or the other charges." (Italics added.)

---

regarding, consecutive sentencing on counts 6 and 7. We need not decide whether Foster's counsel rendered ineffective assistance. As discussed below, we conclude the trial court committed reversible error in imposing consecutive sentencing on counts 6 and 7, for the reasons Foster articulates in his appellate briefing. We also conclude the claim of error was not forfeited despite the lack of objection by Foster's counsel. In asking the trial court to strike his prior strikes, Foster argued for leniency at the sentencing hearing. Foster is not raising on appeal an issue about the manner in which the court exercised its discretion or the reasons it stated for imposing consecutive sentencing. (See *People v. Scott* (1994) 9 Cal.4th 331, 356 ["complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal"].) Foster is claiming the trial court erroneously believed— and indicated on the record—it did not have discretion and had no alternative but to impose consecutive sentencing. This claim of error was not forfeited and may be raised on appeal.

5

We agree with Foster's assertion the record indicates the trial court did not understand its discretion to impose concurrent terms on counts 6 and 7. The court's comment that, "under the Three-Strikes law, the spirit is to impose consecutive sentencing" is incorrect. Where multiple crimes are committed on the same occasion and arise from the same set of operative facts, like the crimes charged in counts 6 and 7, the trial court has discretion to impose either consecutive or concurrent terms. (*People v. Deloza*, *supra*, 18 Cal.4th at pp. 591, 596.) The Three Strikes Law does not mandate—or even favor—consecutive terms under these circumstances. We interpret the court's comment to mean "unfortunately for Mr. Foster," the court had no alternative but to impose consecutive terms on counts 6 and 7. The law provides otherwise.

Because the record indicates the trial court "misunderstood the scope of its discretion to impose concurrent sentences for defendant's current convictions, and erroneously believed consecutive sentences were mandatory," we vacate Foster's sentence and remand the matter for a new sentencing hearing. (*People v. Deloza*, *supra*, 18 Cal.4th at p. 600.) We express no opinion on whether the court should impose concurrent or consecutive terms on counts 6 and 7 in the exercise of its discretion.

## II. Section 667, Subdivision (a)(1), Enhancement

Foster contends the trial court erred in allowing the prosecution to amend the body of the information by interlineation, after the jury was discharged, to include a prior serious felony enhancement allegation under section 667, subdivision (a)(1).[5]

The "Information Summary" set forth on the first page of the information indicated the prosecution intended to allege a special enhancement allegation under section 667, subdivision (a)(1). Foster's prior serious felony convictions were set forth in

---

[5] Section 667, subdivision (a)(1), provides: "In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively."

6

the body of the information. After Foster waived jury trial on the prior conviction allegations and the jury was discharged, the prosecutor noted at a hearing prior to sentencing that the 667, subdivision (a)(1), enhancement was listed on the first page of the information, but not alleged in the body of the information. The prosecutor requested that the information be amended by interlineation. Noting that the prior serious felony convictions were set forth in the body of the information, over Foster's objection the trial court granted the prosecutor's request to amend the information by interlineation to include the special enhancement allegation under section 667, subdivision (a)(1), in the body of the information. As set forth above, the trial court later sentenced Foster to a consecutive five-year term for this enhancement.

Foster cites cases holding a trial court acts in excess of its jurisdiction when it allows the prosecution to amend an information to allege additional prior conviction allegations after a defendant waives jury trial on the original prior conviction allegations and the jury is discharged. (*People v. Tindall* (24 Cal.4th 767, 769-771; *People v. Gutierrez* (2001) 93 Cal.App.4th 15, 23-24.) "Under Penal Code section 1025, subdivision (b), a defendant has the statutory right to have the same jury decide both the issue of guilt and the truth of any prior conviction allegations." (*People v. Tindall*, *supra*, 24 Cal.4th at p. 770, fn. omitted.)

We conclude the trial court erred in allowing the prosecution to amend the body of the information by interlineation, after the jury was discharged, to include a prior serious felony enhancement allegation under section 667, subdivision (a)(1). The fact that the first page of the information cites this Penal Code section does not change our conclusion. There was no prior serious felony enhancement alleged in the information. The enhancement is stricken.

## DISPOSITION

The prior serious felony enhancement under Penal Code section 667, subdivision (a)(1), is stricken. The sentence is vacated and the matter is remanded for resentencing. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


                                                        CHANEY, J.

We concur:


        MALLANO, P. J.


        ROTHSCHILD, J.

8