Filed 7/16/15  P. v. Barnes CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E060922 |
| v. | (Super.Ct.No. FSB1104286) |
| BRANDON TARAY BARNES, | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  William Jefferson Powell IV, Judge.  Affirmed in part; reversed in part with directions.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A.

Gutierrez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Brandon Taray Barnes appeals his conviction on one count of first degree murder and seven counts of premeditated attempted murder, arising out of a single incident in which defendant fired 15 or 16 rounds at a home at which multiple members of a family were gathered. Defendant contends that the standard instruction on the "kill zone" theory of attempted murder does not give the jury sufficient information to allow it to make an informed decision as to whether that theory applies because it fails to inform the jury that the defendant must use a means of killing or attempting to kill a targeted individual that will result in the death of everyone in that person's immediate vicinity. We agree that the instruction is deficient, but we find that defendant was not prejudiced by the error. We also reject defendant's contentions that his sentence constitutes cruel or unusual punishment and violates his right to due process, and we find no abuse of discretion in the trial court's denial of defendant's *Pitchess*[1] motion. We will remand the cause for correction of the sentence.

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

2

PROCEDURAL HISTORY

A second amended information charged defendant with the murder of Nylah Torres[2] (count 1; Pen. Code,[3] § 187, subd. (a)), and with the attempted willful, deliberate and premeditated murders of Justine Aguilar, Ladonna Howie, Jerry Howie, Albert Hull, Jr., Robert Mergil, Lorenzo Mancha, and Justin Wade Hull (counts 2-8; §§ 664, 187, subd. (a)). The information alleged as to each count that defendant personally used a firearm, within the meaning of section 12022.53, subdivisions (b), (c), and (d).

A jury convicted defendant on all counts, finding that the killing of Nylah Torres was first degree murder and that the attempted murders were willful, deliberate and premeditated, and found all of the firearm allegations true. The court sentenced defendant to "274 years followed by a possibility of life."[4]

Defendant filed a timely notice of appeal.

---

[2] The record includes two different spellings of the victim's last name: Torres and Franco-Torrez. We will use the spelling as listed in the second amended information.

[3] All further statutory references are to the Penal Code unless otherwise indicated.

[4] See discussion in section 4, *post*.

FACTS

On September 12, 2011, a number of members of a family, including all of the named victims and an undisclosed number of other relatives, attended a social gathering at the home of Sophia Cardona in San Bernardino. Early in the evening, Ladonna and Jerry Howie went to a store to purchase some ingredients for dinner and some beer. Jerry rode his bicycle and Ladonna walked or rode on Jerry's bicycle. On the way back to the house, they saw defendant in the middle of the street, beating up a young woman. The woman was yelling at him to stop and saying, "I didn't stab her." Jerry yelled at defendant to stop. A verbal altercation ensued between Jerry Howie and defendant and two or three other men who were present. Defendant ran away. Ladonna asked the young woman if she wanted to come with them, but she declined. Jerry and Ladonna returned to the house.

A short while later, defendant walked up to the house where the Howies and their family had gathered. Ladonna and Jerry Howie, Albert and Justin Hull, Lorenzo Mancha and Robert Mergil were all on the porch; the Howies' four-year-old daughter Justine Aguilar was in the front yard. Defendant began shooting at the house, firing approximately 16 rounds from a nine-millimeter semiautomatic handgun. Ladonna was struck in the ear by a bullet, which passed through her head and out the other ear. Justine Aguilar was struck in the head, but survived. Three-year-old Nylah Torres was standing in the living room, near the front window. She was struck in the chest and died shortly afterward.

4

Defendant ultimately admitted shooting at the house, but claimed he aimed high and intended to shoot over the house, simply as a warning to Jerry Howie not to mess with him. He explained that he was beating up the young woman because she was one of several young women who had stabbed his sister.

LEGAL ANALYSIS

1.

DEFENDANT'S *PITCHESS* MOTION WAS PROPERLY DENIED

Defendant filed a *Pitchess* motion (Pen. Code, §§ 832.7, 832.8; Evid. Code, §§ 1043-1045), seeking discovery of any documentation concerning complaints about the improper use of force contained in the personnel file of the detective who interrogated him. Defendant contended that the detective physically assaulted him and coerced him into confessing. The trial court found good cause to require the custodian of records of the San Bernardino County Sheriff's Department to produce any relevant records for the court's in camera review. Following its review, the trial court stated in open court that there were "no discoverable records to turn over" and denied the motion. Defendant now asks that we review the in camera proceeding and any documents produced by the custodian of records to determine whether the trial court abused its discretion in denying the motion.

We review the denial of a *Pitchess* motion for abuse of discretion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228 (*Mooc*).) In *Mooc*, the court held that in order to preserve the defendant's ability to obtain appellate review of the denial of a *Pitchess* motion, the trial court should make a record of the documents it reviewed in camera, either by photocopying the documents or preparing a written list of the documents it reviewed and/or stating on the record the documents it reviewed. (*Id.* at p. 1229.) Defendant asks that we review the documents the trial court reviewed and determine whether the trial court abused its discretion in failing to turn over any or all of those documents to the defense.

We have reviewed the reporter's transcript of the in camera proceeding. In that proceeding, the custodian of records was placed under oath and then informed the court that there were no documents relevant to defendant's request. The trial court properly relied on that assertion. (*Mooc*, *supra*, 26 Cal.4th at pp. 1229-1230 & fn. 4.) Accordingly, there was no abuse of discretion.

2.

DEFENDANT WAS NOT PREJUDICED BY ANY DEFECT IN INSTRUCTION

ON THE "KILL ZONE" THEORY

The prosecutor's theory of the case was that defendant intended to kill Jerry Howie and that to do so, he sprayed 16 bullets at the house, creating a "kill zone" with

6

the intention of killing everyone present.[5]  The jury was instructed on attempted murder using the language of CALCRIM No. 600.  As given in this case, the pertinent portion of that instruction states:  "The defendant is charged in Counts 2 through 8 with attempted murder.  To prove that the defendant is guilty of attempted murder, the People must prove that:  [¶]  One, the defendant took at least one direct, but ineffective step toward killing another person; [¶] and, two, the defendant intended to kill that person.  [¶]  . . .  [¶]  A person may intend to kill a specific victim or victims and at the same time intend to kill everyone in a particular zone of harm or kill zone.  In order to convict the defendant of the attempted murder of Justine Aguilar, Ladonna Howie, Albert Hull, Robert Mergil, Lorenzo Mancha, and Justin Hull, the People must prove that the defendant not only intended to kill Jerry Howie, but also either intended to kill those other people or intended to kill everyone within the kill zone.  [¶]  If you have a reasonable doubt whether the defendant intended to kill those other people or intended to kill Jerry Howie by killing everyone in the kill zone, then you must find the defendant not guilty of the attempted murders of those other people."  In his supplemental brief, defendant contends that this instruction does not give the jury sufficient information because "[t]he jury is not told how to make an informed judgment on the essential issue: does the evidence show that the method of attack was such that it supports the inference

---

[5]  The kill zone theory was adopted by the California Supreme Court in *People v. Bland* (2002) 28 Cal.4th 313 (*Bland*).)  We will discuss the theory below.

that the defendant intended to kill everyone within the scope of his or her attack as a means of killing the 'targeted' victim?"**6**

The California Supreme Court has held that no specific instruction on the kill zone theory is required. (*Bland*, *supra*, 28 Cal.4th at p. 331, fn. 6.) However, if a trial court does give an instruction, whether required or not, it must provide a complete and accurate statement of the law, sufficient to inform the jury of the general principles of law necessary for the jury's understanding of the case. (*People v. Ramirez* (2015) 233 Cal.App.4th 940, 949; *People v. Givan* (2015) 233 Cal.App.4th 335, 343.) If a trial court's failure to properly instruct the jury affects the defendant's substantial rights, the defendant's failure to object does not bar an appeal. (*Ibid*.) We independently determine whether instructions correctly state the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

Attempted murder requires the specific intent to kill, but the defendant need not intend to kill a specific person. Under the kill zone theory, if the defendant intends to kill a specific person and in order to do so employs a means that will cause the death of every person in the immediate vicinity of the target, the defendant may be liable for the attempted murder of every such person. Examples include placing a bomb on an airplane or spraying a group of people with gunfire sufficient to cause the death of every person

---

**6** Although defendant refers to cases holding that it is error to give an instruction that is not supported by the evidence, he does not argue that evidence in this case was insufficient to support the instruction.

present. However, there must be evidence that the defendant specifically intended to kill every person in the zone. It is not sufficient that the defendant intended to kill one specific person and acted with conscious disregard for the likelihood of killing others. The jury can infer the defendant's intent to kill everyone around the target victim from the method the defendant used.[7] (*Bland*, *supra*, 28 Cal.4th at pp. 329-331.)

CALCRIM No. 600 does not, as defendant points out, explain that in order to support the inference that the defendant intended to kill everyone within the "zone of harm," the defendant's method of attempting to kill the target victim must be such that everyone surrounding that victim would be expected to die as well. We agree that the instruction should state that requirement explicitly. However, the omission was not prejudicial, in that there is no reasonable probability that the jury would have returned a more favorable verdict if it had been so instructed. (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 214.) Firing into a group of people using enough bullets to kill everyone in the group supports the inference that the defendant intended to kill every person present. (*Bland*, *supra*, 28 Cal.4th at pp. 330-331.) Here, Jerry Howie appears to have been the primary target. Howie was on the porch. The six other attempted murder victims were outside in front of the house, either in the yard or on the porch, near Howie. Using a semiautomatic pistol, defendant fired 15 or 16 shots. This evidence is sufficient to

---

[7] The scope of the kill zone theory as it has been interpreted by the intermediate Courts of Appeal is currently on review in *People v. Canizales*, S221958 (rev. granted Nov. 19, 2014) (Fourth Dist., Div. Two).

support the inference that defendant intended to kill all seven individuals. The jury was instructed that it must find that defendant specifically intended to kill each victim, and as to each count of attempted murder it returned a true finding that defendant specifically intended to kill the victim. It is not reasonably probable that if the full instruction had been given, the jury would have concluded that the method defendant employed did not support the inference that he intended to kill everyone surrounding Howie.

3.

DEFENDANT'S SENTENCE IS CONSTITUTIONAL

Defendant contends that his sentence of 274 years to life violates the ban on cruel and/or unusual punishment embodied in both the state and federal constitutions and violates the due process clauses of both constitutions because it is the functional equivalent of life without the possibility of parole, a sentence the Legislature intended to reserve for certain aggravated forms of murder. As we discuss in section 4, *post*, properly stated, defendant's sentence is not 274 years to life. Nevertheless, consisting as it does of nine consecutive terms of 25 years to life and seven consecutive terms of life with the possibility of parole, it is, as defendant contends, the functional equivalent of life in prison without the possibility of parole. The question is whether that is unconstitutional.

10

Defendant's cruel and unusual punishment argument relies on dissenting and concurring opinions by the late California Supreme Court Justice Stanley Mosk, who argued that a sentence that cannot possibly be completed within the defendant's lifetime serves no rational legislative purpose and constitutes cruel and unusual punishment. (*People v. Hicks* (1993) 6 Cal.4th 784, 797 (dis. opn. of Mosk, J.); *People v. Deloza* (1998) 18 Cal.4th 585, 600-602 (conc. opn. of Mosk, J.).) Neither the California Supreme Court nor the United States Supreme Court has adopted Justice Mosk's view, however, and defendant provides no analysis or argument beyond the bare citations to Justice Mosk's dissent and concurrence which might persuade us that his sentence does violate the prohibition on cruel and/or unusual punishment. We may reject such a perfunctory argument without discussion. (*People v. Weaver* (2001) 26 Cal.4th 876, 986-987.)

Defendant also contends that the sentence violates the ban on cruel and unusual punishment and due process because the de facto sentence of life without the possibility of parole is the same punishment as is imposed for murder with special circumstances but without a finding of any such circumstance. He asserts, with no analysis, that by enacting section 190.2, which establishes the special circumstances that can result in sentences of death or life in prison without the possibility of parole, the Legislature expressed its intention that only under such circumstances could a sentence of life without the possibility of parole be applied. That contention is belied by the fact that the Legislature has enacted other sentencing schemes, such as the three strikes law, which provide for

11

multiple lengthy consecutive terms which also may result in a de facto sentence of life without the possibility of parole.  (§ 667, subds. (c)(6), (7), (e); *People v. Deloza*, *supra*, 18 Cal.4th at pp. 589-600 [affirming a sentence of 11 years plus four consecutive terms of 25 years to life for four counts of armed robbery against four victims in a single incident].)

4.

CORRECTION OF SENTENCE

The court sentenced defendant to 25 years to life for the murder of Nylah Torres, with a consecutive term of 25 years to life for gun use on that count.  It then purported to sentence defendant to seven years to life, consecutively, on each of the attempted murder counts, with a consecutive term of 25 years to life for gun use as to each of those counts. The court concluded that the total sentence was "274 years followed by a possibility of life."  This is erroneous as a matter of law.  The statutory term for willful, deliberate and premeditated attempted murder is life with the possibility of parole.  (§ 664.)  A person sentenced to that term is not eligible for parole until he or she has served seven years. (§ 3046.)  However, although that parole ineligibility period is deemed to be a minimum term for purposes of second-strike offender sentencing under the three strikes law (*People v. Jefferson* (1999) 21 Cal.4th 86, 92-97; §§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), it is not otherwise a minimum term.  (*People v. Felix* (2000) 22 Cal.4th 651, 654, 657-659.)

12

Accordingly, the correct sentence for each count of attempted murder is life with the possibility of parole, not seven years to life. We will remand the cause with directions to issue a corrected abstract of judgment and corrected sentencing minutes.

<u>DISPOSITION</u>

The judgment is reversed to the extent that it imposes a term of seven years to life on counts 2 through 8. The judgment is otherwise affirmed.

The superior court is directed to issue a corrected abstract of judgment and corrected sentencing minutes reflecting imposition of a sentence of life with the possibility of parole on counts 2 through 8. The superior court is directed to provide a copy of the corrected abstract of judgment and the corrected sentencing minutes to the parties and to the Department of Corrections and Rehabilitation within 30 days after this opinion becomes final.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>McKINSTER</u>
Acting P. J.

We concur:

<u>KING</u>
J.

<u>MILLER</u>
J.

13