Filed 1/13/16  P. v. Jones CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JARON JONES,<br><br>    Defendant and Appellant. | B259837<br><br>(Los Angeles County<br> Super. Ct. No. NA096031) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark C. Kim, Judge.  Affirmed as Modified.

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael R. Johnsen and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Jaron Jones of one count of second degree robbery (Pen. Code, § 211)[1] and two counts of attempted second degree robbery (§§ 664/211), with a finding that he personally used a firearm in the crimes (§ 12022.53, subd. (b)). The trial court sentenced him to 21 years in state prison. He appeals from the judgment, contending: (1) the prosecutor committed misconduct during argument by referring to facts not in evidence; (2) the trial court misunderstood the scope of its sentencing discretion; and (3) he is entitled to additional presentence credit. Respondent notes that the abstract of judgment fails to reflect the fees imposed under section 1465.8, subdivision (a)(1) and Government Code section 70373, subdivision (a)(1).

We reject defendant's claims of prosecutorial misconduct and sentencing error. We order the abstract of judgment amended to reflect: (1) a total award of 117 days of presentence custody credit (102 days of actual custody, plus 15 days good time/work time under § 2933.1); (2) a court operations assessment of $120 under section 1465.8, subdivision (a)(1); and (3) a court facilities assessment of $90 under Government Code section 70373, subdivision (a)(1). As so amended, we affirm the judgment.

## BACKGROUND

*Prosecution Evidence*

Defendant's convictions arose from an incident that occurred in Long Beach at around 8:00 p.m. on June 15, 2013. That night, Antonio Quintanilla, Octavio Lopez, and Gregory Palomera were walking home when two men came up behind them, one of whom, later identified as defendant, held a semi-automatic pistol.

---

[1] Further unspecified section references are to the Penal Code.

Defendant grabbed Quintanilla, pointed the gun at his abdomen, and demanded that he empty his pockets. When Lopez and Palomera resisted, defendant's accomplice said, "They think we are playing," and told defendant to shoot them. Defendant cocked the pistol and pointed it at them. Quintanilla handed defendant his iPhone. Lopez shouted to a neighbor to call the police and the assailants fled.

After the police arrived, Quintanilla, Lopez and Palomera described the assailants as male African Americans. Describing the man with the gun, they said he was about 5 feet 9 inches tall and about 180 pounds. His arms had many tattoos, including a distinctive star tattoo on one elbow. Quintanilla recognized defendant as someone he went to high school with, but could not immediately recall his name. After he got home, he looked in his high school yearbook and found defendant's photograph and name. He then called the police and gave them defendant's name.

At trial, defendant displayed his tattoos to the jury, including a star tattoo on his left elbow as described by the victims. All three victims identified defendant at trial, and Quintanilla identified him in a pretrial photographic lineup.

*Defense Evidence*

Defendant presented an alibi defense. His mother (Cynthia Towers), cousin (Derek Nicholson), and a family friend (Kechelle Smith) testified that defendant was at a graduation party in Perris, California, from mid-afternoon on the date of the crime until around 9:30 p.m.

## DISCUSSION

### I. *Prosecutorial Misconduct*

Defendant contends that the prosecutor committed misconduct in his rebuttal argument by referring to facts not in evidence. We disagree.

### A. *Relevant Proceedings*

Before argument, the trial court instructed the jury on the relevant principles of law governing the case. As to eyewitness identification, the court gave CALJIC No. 2.91 on the prosecution's burden of proving identity based on eyewitness testimony, and CALJIC No. 2.92 on the factors to be considered in evaluating eyewitness testimony.[2]

---

[2]     CALJIC No. 2.91 states: "The burden is on the People to prove beyond a reasonable doubt that the defendant is the person who committed the crime with which he is charged. [¶] If, after considering the circumstances of the identification and any other evidence in this case, you have a reasonable doubt whether defendant was the person who committed the crime, you must give the defendant the benefit of that doubt and find him not guilty."

CALJIC No. 2.92 states: "Eyewitness testimony has been received in this trial for the purpose of identifying the defendant and the perpetrator of the crimes charged. In determining the weight to be given eyewitness identification testimony, you should consider the believability of the eyewitness as well as other factors which bear upon the accuracy of the witness' identification of the defendant, including, but not limited to, any of the following: [¶] The opportunity of the witness to observe the alleged criminal act and the perpetrator of the act; [¶] The stress, if any, to which the witness was subjected at the time o the observation; [¶] The witness' ability, following the observation, to provide a description of the perpetrator of the act; [¶] The extent to which the defendant either fits or does not fit the description of the perpetrator previously given by the witness; [¶] The cross-racial or ethnic nature of the identification; [¶] The witness' capacity to make an identification; [¶] Evidence relating to the witness' ability to identify other alleged perpetrators of the criminal act; [¶] Whether the witness was able to identify the alleged perpetrator in a photographic or physical lineup; [¶] The period of time between the alleged criminal act and the witness' identification; [¶] The extent to which the witness is either certain or uncertain of the identification; [¶] Whether the

The bulk of defense counsel's argument relied on these instructions to cast doubt on the victims' identification of defendant as the gunmen. Early in his argument, defense counsel stated: "[Y]ou have to ask yourself why . . . did the Legislature or why is it that the law requires you to consider certain factors. Why? Because there have been mistakes. There have been a lot of mistakes. A simple Google and you will see hundreds of wrongful convictions based on incorrect eyewitness identification."

In his rebuttal argument, the prosecutor responded to defense counsel's admonition that "hundreds of wrongful convictions" had been "based on incorrect eyewitness identification." The prosecutor stated: "The defense was trying to argue something that wasn't really an argument. And what they were doing was, they start off with the scare tactic. What do I mean by that? The defense tried to indicate to you and say, well, think about this, think about those I.D. cases. Think about all those I.D. cases that you have heard about before in the news. And they wanted you to believe that this was that kind of case, that this was some sort of case where I.D. is actually an issue.

"And as from your commonsense, I think you could realize that any time they are disputing I.D., that this is a common tactic that will be used. But here is the thing. He forgot to mention that there is something about this case that makes it unlike those other cases, that there is something about this case that makes the analogy break down. And what is that?

"Did he talk about – and just think about from your commonsense. Did he talk about how many or what kind of cases those were? And were those cases

---

witness' identification is in fact the product of his own recollection; and [¶] Any other evidence relating to the witness' ability to make an identification."

where the victim or the witness actually knew the person from before, had some sort of prior contact from before?

"When you think about those cases, those cases, are those the type of cases where there is contact with the person that they have identified at school, once a week or so, seeing that person around? No.

"Why? Because what are those cases of? Those are cases where the victims are victimized by strangers, by people they don't know. This happens and the identification is done later on. And where these identifications happened, these are done with very little to no corroborating evidence where it is based on I.D., and there is nothing after the fact, no physical descriptions, nothing that ties those people to the crime. And that's why that's different.

"So don't fall for the scare tactic. Don't fall for what is commonly done in I.D. cases. This is not that kind of case. Use your commonsense, okay, as you think about the evidence, because if you buy the scare tactic, what is going to happen is, you are going to buy – what's the word? You are going to fall into the trap of not paying attention to the actual evidence that was presented to you. Because the actual evidence that was presented to you will show you that this is not like those cases where there are multiple witnesses, multiple witnesses, one of which who has seen him before.

"[DEFENSE COUNSEL]: Your Honor, I am going to object. This is argument. Facts not presented before the jury.

"THE COURT: As I indicated previously, ladies and gentlemen, what the attorneys have to say, they are not evidence. This is an argument. Please remember that you already have heard and seen the evidence. Please continue.

"[THE PROSECUTOR]: Thank you, Your Honor.

6

"And this is not the type of case where – or this is the type of case where there are multiple witnesses who see it, multiple people who are able to identify, and then one person knows the person from before, and all of the witnesses are able to identify an attribute of the defendant that they had no reason to know about before. That's what makes this different from those cases. That's why the scare tactic should not – should not work. And I hope that you won't let it."

B. *Analysis*

On appeal, defendant contends that prosecutor used "the knowledge of his office" and "facts outside of the record" to distinguish this case from prior instances of misidentification referred to by defense counsel. We find no misconduct.

It is misconduct for a prosecutor to refer to matters outside the record, "because such statements 'tend[] to make the prosecutor his own witness – offering unsworn testimony not subject to cross-examination. It has been recognized that such testimony, "although worthless as a matter of law, can be 'dynamite' to the jury because of the special regard the jury has for the prosecutor, thereby effectively circumventing the rules of evidence." [Citations.]'" (*People v. Hill* (1998) 17 Cal.4th 800, 828.) When a claim of such misconduct is made, the question is whether there is a reasonable likelihood that the jury construed the challenged comments in an objectionable manner. (*People v. Ayala* (2000) 23 Cal.4th 225, 283-284.) Of course, in making this determination, the challenged remarks must be viewed in context. (*People v. Welch* (1999) 20 Cal.4th 701, 752-753.) Moreover, "'a prosecutor is given wide latitude during argument. . . . It is . . . clear that counsel during summation may state matters not in evidence, but

which are common knowledge or are illustrations drawn from common experience, history or literature.'" (*People v. Wharton* (1991) 53 Cal.3d 522, 567.)

Here, there is no reasonable likelihood that the jury understood the prosecutor to be presenting his own, unsworn testimony to the jury. To the contrary, the thrust of the prosecutor's argument was not to place facts of other cases before the jury, but to urge the jury to use its common experience and common sense, and to focus on the evidence presented in determining whether the eyewitness identifications in this case were reliable. Insofar as he referred to other cases, the prosecutor's comments, in substance, amounted to no more than the assertion that misidentification is more likely when the witness has never encountered the perpetrator before, than it is in a case in which a perpetrator is identified by three eyewitnesses, three of whom recognize a unique characteristic of the perpetrator (the star tattoo on defendant's elbow) and one of whom is familiar with the perpetrator. Moreover, the comments were consistent with some of the factors the jury was instructed to consider in weighing the eyewitness testimony (i.e., "[t]he witness' capacity to make an identification"; "[t]he extent to which the witness is either certain or uncertain of the identification"; "[w]hether the witness' identification is in fact the product of his own recollection"). In short, the prosecutor's argument was proper rebuttal to defense counsel's urging the jury to be reluctant to convict based on prior cases of misidentification.

## II. *Discretion in Sentencing*

In sentencing defendant, the trial court imposed 13 years for count 1 (the robbery of Quintanilla), consisting of the three-year mid-term for the robbery plus 10 years for the firearm enhancement. On counts 2 and 3 (the attempted robberies of Palomera and Lopez), the court imposed consecutive sentences of 48 months

each (one-third the 24-month mid-term for the attempted robbery, plus one-third of the 10-year firearm enhancement).

Defendant contends that the court misunderstood its discretion to impose concurrent rather than consecutive sentences on the attempted robbery counts. However, the contention is forfeited, because defense counsel failed to object in the trial court. (*People v. Scott* (2015) 61 Cal.4th 363, 406 [failure to object to trial court's improper discretionary sentencing choice forfeits issue on appeal].) In any event, the record does not support the contention.

Before the sentencing hearing, the prosecutor submitted a sentencing memorandum asking the court to impose the maximum sentence of 23 years, including consecutive terms on the attempted robbery counts. The prosecutor did not argue that the consecutive sentences were mandatory.

At the sentencing hearing, defense counsel argued for a term of 12 years for all the crimes, premised on the low term of two years on the robbery, plus the mandatory 10-year consecutive term for the firearm enhancement. Although not expressly stated, such a sentence necessarily required concurrent terms on the attempted robbery counts.

In response, the prosecutor argued for consecutive sentences on the attempted robbery counts: "Your Honor, I do believe that counts 2 and 3 run consecutive in addition because they are violent crimes against multiple victims. And I do believe [section] 654 and . . . the case law . . . specifically addresses that issue. So I do believe that the defendant's max is 23 years. I believe his minimum based on the fact that count 2 and 3 should run consecutive . . . would make his minimum 20 years, but on top of just what the – what I believe the law requires in terms of what the minimum and maximum are." The prosecutor explained that he was asking for the maximum sentence "mainly because of the behavior after even

9

the crime occurred and this case was pending that the defendant continued to engage in criminal activity, and there has been no indication of anything but callousness towards these types of crimes."

Regarding the prosecutor's claim that defendant continued to engage in criminal activity, defense counsel responded that the prosecutor was "addressing that there was suspicion on my client. My client was never charged." The court stated that it was "only considering . . . what was presented during trial." Defense counsel then argued again for the minimum 12-year sentence: "With respect to the mitigation, one last thing. I am just pointing out that . . . my client graduated from high school during the time that he was working and during the time that he was enrolled in college, this was all during the period after he posted bail up until . . . when he was convicted. So during this entire time he was being productive and he was gainfully employed and continuing to go to school."

The court replied that it "did consider mitigating and aggravating factors. Clearly, Mr. Jones went on a crime spree where he used a gun in conducting multiple completed or attempted robberies. Defendant is to be imprisoned . . . for a total aggregate term of 21 years." The court then imposed sentence, including consecutive terms for the attempted robberies.

Nothing in this record suggests that the court misunderstood that it had discretion to run the sentences on the attempted robbery counts concurrently. Defendant contends that the trial court failed to expressly indicate its understanding that it had discretion to sentence concurrently on the attempted robbery counts. However, "in light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, we cannot presume error where the record does not establish on its face

that the trial court misunderstood the scope of that discretion." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.)

Defendant contends that the prosecutor argued that consecutive sentences were mandatory, and that the court must have been influenced by that argument. However, the prosecutor's point was not that the court had no discretion to impose concurrent terms, but rather that section 654 permitted consecutive terms for violent crimes against multiple victims, and that the aggravating factors "required," in other words, "called for," the consecutive sentences. (See *People v. Deloza* (1998) 18 Cal.4th 585, 592 [§ 654 does not preclude multiple punishment when defendant commits a violent crime against more than one victim].) Moreover, the underlying premise of defense counsel's argument for a term of 12 years was that the court would run the sentences on the attempted robbery counts concurrently, based on factors in mitigation. The court declared that it had considered factors in aggravation and mitigation, thus acknowledging its discretion in sentencing, and proceeded to impose consecutive terms. On this record, it is apparent that the court and the parties fully understood the court's sentencing discretion.

III.    *Custody Credit*

Defendant contends, and respondent concedes, that he is entitled to a total of 117 days of presentence custody credit (102 days of actual custody, plus 15 days good time/work time under section 2933.1). We order the abstract so amended.

IV.    *Additional Fees*

As part of a felony sentence, the trial court is required to impose a court operations assessment ($40 for each conviction) under section 1465.8, subdivision (a)(1), and a court facilities assessment ($30 for each conviction) under

11

Government Code section 70373, subdivision (a)(1).  (See *People v. Robinson* (2012) 209 Cal.App.4th 401, 405.)

Respondent notes that at the sentencing hearing, the court orally imposed these fees – a $120 fee under section 1465.8, subdivision (a)(1), and a $90 fee under Government Code section 70373, subdivision (a)(1).  These fees appear in the minute order from the sentencing hearing but not in the operative abstract of judgment.  Therefore, the abstract of judgment must be amended to reflect these fees.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## DISPOSITION

The judgment is modified to reflect: (1) a total award of 117 days of presentence custody credit (102 days of actual custody, plus 15 days good time/work time under section 2933.1); (2) a court operations assessment of $120 under section 1465.8, subdivision (a)(1); and (3) a court facilities assessment of $90 under Government Code section 70373, subdivision (a)(1). The clerk of the superior court shall prepare an amended abstract of judgment reflecting these changes and forward it to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, Acting P. J.

We concur:

MANELLA, J.

COLLINS, J.

13