Filed 7/12/24  P v. Valli CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>KACEY VALLI,<br><br>    Defendant and Appellant. | C097960<br><br>(Super. Ct. No. 21FE004937) |

After a jury found defendant Kacey Valli guilty of multiple crimes, including assault with a deadly weapon, and after the trial court found true the allegations he had two prior serious felony convictions, the trial court imposed a sentence of four years followed by an indeterminate term of 25 years to life.  On appeal, Valli contends (1) his trial counsel provided ineffective assistance by failing to object to the trial testimony of his victim, M.T., that his life was "completely destroyed" and that he feared for his life and feared for his children, and (2) his sentence is cruel and/or unusual under the federal and state Constitutions.  We affirm.

1

BACKGROUND

M.T. was at his girlfriend's aunt's residence one evening in March 2021 when Valli began physically attacking the aunt. "I'm not here for this," M.T. declared as he stood up to leave. Valli hit M.T. in the face with something hard, breaking his cheekbone and knocking him to the ground. Valli hit M.T. again when he was on the floor. Bleeding from his eye, M.T. left the residence and tried to drive away. Valli gave chase and drove into M.T.'s car several times.

A few weeks later, police officers stopped a car that Valli was traveling in. After Valli ran away, officers found a firearm inside the car near where Valli was sitting.

In a January 2023 information, the prosecution alleged Valli committed seven crimes, including two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and one count of unlawful possession of a firearm by someone with a felony conviction (*id.*, § 29800, subd. (a)(1)), and had two prior serious felony convictions (*id.*, §§ 667, subds. (b)-(i), 1170.12).

The first question the prosecutor asked M.T. at trial was "Do you want to be here today?" "No," M.T. replied. "And how do you feel about being here?" the prosecutor asked. "Not safe," M.T. answered. "And the only reason you're here [is] because I subpoenaed you to be here?" "Yes," M.T. said.

Cross-examination of M.T. was somewhat contentious. On a few occasions, the trial court interjected and told M.T. to let defense counsel finish asking a question before responding. On one occasion, the trial court told defense counsel to let M.T. finish answering the question before posing a new one. On another occasion, the trial court instructed M.T. not to respond to defense counsel's questions by posing a question of his own.

On redirect, the prosecutor posed a final question to M.T.: "[S]itting here today, as you're answering questions, you obviously look agitated and upset, okay? [¶] Can you tell us why that is?" M.T. replied: "My whole life was changed around. This has

2

completely destroyed my life.  I don't feel comfortable.  [¶]  I have moved houses so many times.  I've been in fear for my life since the day it started.  [¶]  I've had death threats.  I've had people threaten me here in the court, all kinds of craziness.  [¶]  My life has never been the same.  I fear for my kids, feel that this is just never gonna to stop, even after this.  [¶]  It's just -- It is what it is now."

After the jury found Valli guilty on six of the seven counts he faced, the trial court found true the allegations that Valli had two prior serious felony convictions and in February 2023 imposed a sentence of four years followed by an indeterminate term of 25 years to life.  Valli filed a notice of appeal with this court in February 2023.  After delays in preparation of the record as well as multiple requests to continue the briefing schedule by both parties, this case became fully briefed on April 29, 2024.

DISCUSSION

I

*Trial Counsel's Decision Not to Object to M.T.'s Testimony*

Valli contends his trial counsel provided ineffective assistance by failing to object to M.T.'s answer to the prosecutor's last question on redirect, detailed above.  We agree with the People that this claim lacks merit because trial counsel had no duty to object.

A.     *Legal Background*

To demonstrate ineffective assistance, a criminal defendant must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. On direct appeal, a finding of deficient performance is warranted where (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  Where trial counsel's tactics or strategic reasons for challenged decisions do not appear on the record, the court must not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for the acts or omissions.  (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.)

3

B.    *Analysis*

Valli contends M.T.'s response to the prosecutor's last question on redirect was irrelevant and prejudicial because it concerned the "alleged impact of [his] conduct on" M.T. and encouraged the jury to despise him. Valli further contends that any probative value of the evidence was "far outweighed by its prejudicial effect."

These contentions are unpersuasive. *People v. Merriman* (2014) 60 Cal.4th 1 stands for the proposition that a prosecutor's inquiry into a witness's demeanor on the witness stand is relevant to the evaluation of the witness's credibility. (*Id.* at pp. 84-85 ["Under Evidence Code section 780, which concerns the scope of questioning at trial, a jury may consider" a "witness's 'demeanor while testifying and the manner in which' the witness testified (Evid. Code, § 780, subd. (a)), and the witness's 'attitude toward the action' or 'toward the giving of testimony' (*id.*, subd. (j))"].) Here, some of the prosecutor's questions to M.T., and some of M.T.'s answers, touch on these concepts. M.T.'s answers to the prosecutor's first questions indicated that M.T. was a reluctant witness. And after a somewhat contentious cross-examination, M.T.'s answer to the prosecutor's last question on redirect suggested to the jury that M.T.'s visible agitation on the witness stand may have been partly attributable to his reluctance to testify and feelings of fear and discomfort. Accordingly, because there was a rational basis for not objecting to M.T.'s testimony, trial counsel did not provide ineffective assistance.

Valli's contention that if trial counsel *had* objected the trial court would have stricken M.T.'s challenged testimony, after concluding that the probative value of the testimony was substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice (see Evid. Code, § 352), is speculative and unsupported by citation to any case law. A trial court's decision to admit or exclude evidence will not be disturbed on appeal except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) On this

4

cold record, we cannot say that a decision by the trial court to admit M.T.'s challenged testimony over objection would have been patently absurd. (See *People v. Merriman*, *supra*, 60 Cal.4th at p. 85 ["Although the cold record does not fully disclose the witness's emotional state at the outset of questioning, it strongly suggests she was nervous and shaken," and "testimony indicating it was difficult for her to testify in front of defendant and his mother tended to explain her demeanor on the witness stand and therefore was relevant to her credibility"].)

## II

### *The Sentence is Not Cruel and/or Unusual Punishment*

Valli contends his sentence of four years plus 25 years to life constitutes cruel and/or unusual punishment under the federal and state Constitutions. Specifically, he argues that because he was 39 years old when the punishment was imposed, and given "the rigors of prison," it is "unlikely" he will complete the sentence in his lifetime, making it a "*de facto*" sentence of life without parole. For support, Valli invokes a concurring opinion by Justice Mosk in one case and a dissenting opinion by him in another.[1]

This claim is unpersuasive for multiple reasons.[2] First, as we recently explained in *People v. Panighetti*, *supra*, 95 Cal.App.5th at pages 1001-1002, the Justice Mosk opinions that Valli invokes are not precedential and not persuasive. Second, Justice Mosk argued in those cases that sentences that *cannot possibly* be completed in a defendant's lifetime are unconstitutional. That reasoning is inapplicable here, where Valli argues only that it is *unlikely* he will complete his sentence. Third, Valli cites no

---

[1] See *People v. Deloza* (1998) 18 Cal.4th 585, 600-602 (conc. opn. of Mosk, J.) and *People v. Hicks* (1993) 6 Cal.4th 784, 797 (dis. opn. of Mosk, J.).

[2] In the interest of judicial economy, we reach the merits of this issue raised for the first time on appeal. (See *People v. Panighetti* (2023) 95 Cal.App.5th 978, 1001.)

evidence for the conclusory and speculative contention that it is unlikely he will complete his sentence, rendering the contention unpersuasive on that basis alone.  (See *Federation of Hillside & Canyon Associations v. City of Los* Angeles (2000) 83 Cal.App.4th 1252, 1265.)  Fourth, common sense and experience suggest it is not at all unlikely that a 39-year-old man will survive 29 years in prison.  (Cf. *People v. Contreras* (2018) 4 Cal.5th 349, 360-363 [rejecting an "actuarial approach" to Eighth Amendment analysis in the juvenile offender context and noting that, while incarceration may accelerate the aging of inmates in some regards, it may also shield inmates from stresses present outside of prison; and observing that a report by the Centers for Disease Control and Prevention based on 2010 data says life expectancy for Hispanic males is over 78 years].)

DISPOSITION

The judgment is affirmed.


/s/<br>BOULWARE EURIE, J.



We concur:


/s/
ROBIE, Acting P. J.



/s/
MESIWALA, J.


6